NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0768-13T2

STATE OF NEW JERSEY,

       Plaintiff-Respondent,

  v.

VICTOR GONZALEZ,

       Defendant-Appellant.

_____

| APPROVED FOR PUBLICATION |
| :---: |
| January 25, 2016 |
| APPELLATE DIVISION |

Argued October 27, 2015 — Decided January 25, 2016

Before Judges Fisher, Rothstadt and Currier.

On appeal from the Superior Court of New Jersey, Law Division, Camden County, Indictment No. 12-02-0465.

Michele E. Friedman, Assistant Deputy Public Defender, argued the cause for appellant (Joseph E. Krakora, Public Defender, attorney; Ms. Friedman, of counsel and on the brief).

Patrick D. Isbill, Assistant Prosecutor, argued the cause for respondent (Mary Eva Colalillo, Camden County Prosecutor, attorney; Mr. Isbill, of counsel and on the brief).

The opinion of the court was delivered by

FISHER, P.J.A.D.

Defendant was convicted of robbery and aggravated assault, among other things, and sentenced to an aggregate nineteen-year

prison term. In appealing, defendant argues in part that the jury instructions were ambiguous in certain critical respects, resulting from the judge's repeated use of the phrase "and/or" when describing many of the issues the jury was obligated to decide. Notwithstanding defendant's failure to object at trial, we agree the judge's instructions were clearly capable of producing an unjust result and, therefore, reverse and remand for a new trial.

The jury heard evidence that, on June 28, 2011, defendant Victor Gonzalez was present when Marcus Zayas robbed and then shot Brian Arnold in the parking lot of what was referred to at trial as "the soap factory," a building located on Essex Street in Gloucester City. The State asserted that Gonzalez conspired with Zayas and Adrian Aponte to rob and then assault Arnold. Zayas — who, prior to this trial, pleaded guilty to attempted murder and conspiracy to commit robbery as a result of his involvement — testified that on the evening in question, Aponte called Arnold, and told him that Zayas, Aponte, and defendant wanted to purchase drugs from Arnold that night. According to Zayas, shortly after arriving at the soap factory, defendant and Aponte told him how the robbery was going to occur: Zayas was to remain behind a dumpster, while Aponte and defendant stood on a nearby loading dock, and, after a whistle from either Aponte or

defendant, Zayas was to emerge with his face covered and with a .38 caliber handgun, which defendant provided, rob in sequential order defendant, Arnold, and Aponte.

Arnold arrived, and the drug transaction occurred. Zayas testified that after hearing two whistles, he emerged from behind the dumpster, walked up, pointed the gun at Arnold, and told Arnold to give him the drugs. Arnold, however, grabbed the gun and as the two "wrestl[ed]" with it, a shot was fired. According to Zayas, he turned to Aponte and defendant, and asked what he should do. As directed by Aponte, Zayas shot Arnold as he ran off. Arnold was struck by a bullet when he was approximately six to seven yards away; Zayas, Aponte, and defendant left the soap factory and returned to Aponte's house.

Defendant presented a different version. He testified that on June 28 he attended a parade with Zayas, following which they went to Aponte's house. Defendant denied discussing a robbery with Aponte or Zayas there, but he acknowledged that Aponte asked him if he wanted to go with Aponte and Zayas to rob Arnold; defendant declined, but Aponte told him he had to join in because defendant owed Aponte's brother money and Aponte threatened to hurt defendant's grandmother if he did not participate.

According to defendant, Aponte gave him a gun and told him to ride his bike to the soap factory, where Aponte and Zayas met him. It was defendant's understanding that Zayas was going to rob defendant, then Aponte, and finally Arnold. Aponte called Arnold using defendant's cell phone to tell him they were at the soap factory. After Arnold arrived, Aponte bought marijuana from him. Following the exchange, Zayas emerged from behind the dumpster and, according to defendant, walked up to Arnold, "pointed the gun [at him,] and said give me all your stuff." Arnold and Zayas then wrestled with the gun for a short while. Aponte told Zayas to shoot Arnold, and Zayas fired two shots. After the second shot, defendant saw Arnold "crawling" away on all fours. Defendant took the gun from Zayas and returned to Aponte's house where he threw the gun under the backyard deck.

Arnold was able to get to a liquor store approximately one block from the soap factory. Police were called and an ambulance summoned.

Based on statements Arnold gave the day after the shooting, a detective was able to identify one of the actors as Zayas. The detective obtained a statement from Zayas, from which he was able to identify Aponte and defendant as the others involved.

Defendant was charged with: first-degree armed robbery, N.J.S.A. 2C:15-1; second-degree conspiracy to commit robbery,

N.J.S.A. 2C:5-2; N.J.S.A. 2C:15-1; second-degree aggravated assault, N.J.S.A. 2C:12-1(b)(1); third-degree aggravated assault, N.J.S.A. 2C:12-1(b)(2); fourth-degree aggravated assault, N.J.S.A. 2C:12-1(b)(4); third-degree aggravated assault N.J.S.A. 2C:12-1(b)(7); second-degree possession of a weapon for an unlawful purpose, N.J.S.A. 2C:39-4(a); second-degree unlawful possession of weapons, N.J.S.A. 2C:39-5(b); third-degree endangering an injured victim, N.J.S.A. 2C:12-1.2; and third-degree hindering apprehension or prosecution, N.J.S.A. 2C:29-3(b)(1). After the denial of his motion to suppress statements made to police, defendant was tried over the course of seven days and convicted on all counts.

The trial judge denied defendant's motion for a new trial. At sentencing on May 10, 2013, after merging the aggravated assault convictions, as well as the possession of a weapon for an unlawful purpose conviction with the armed robbery conviction, the judge imposed the following concurrent prison terms: fifteen years for the armed robbery conviction; seven years for the conspiracy conviction;[1] seven years for the aggravated assault conviction; seven years for the unlawful weapons possession conviction; and four years for the

---

[1] These first three prison terms were also subject to an eighty-five percent period of parole ineligibility pursuant to the No Early Release Act, N.J.S.A. 2C:43-7.2.

endangering conviction. The judge also imposed a consecutive four-year prison term on the hindering conviction.

Defendant appeals, arguing:

> I. NUMEROUS CHARGE ERRORS DEPRIVED GONZALEZ OF HIS FUNDAMENTAL RIGHT TO A FAIR TRIAL (Not Raised Below).
>
>> A. The Jury Instructions Erroneously Indicated that Gonzalez Could be Found Guilty of All of the Offenses Committed by Zayas if Gonzalez was a Co-Conspirator or Accomplice to Robbery "and/or" Aggravated Assault.
>>
>> B. When Re-Charging the Jury, the [The Trial Judge Stated] that Gonzalez Could be Found Guilty of a Knowing or Reckless Attempt — A Legal Impossibility.
>>
>> C. The Instructions Failed to Proscribe the Jury from Inferring Gonzalez's Guilt Based Upon the Issuance of an Arrest Warrant and His Ensuing Incarceration.
>>
>> D. The Trial Court Charged the Jury With the Incorrect Lesser-Included Offense.
>>
>> E. The Cumulative Effect of the Charge Errors Constitutes Plain Error Warranting Reversal.
>
> II. THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN DENYING THE MOTION FOR A JUDGMENT OF ACQUITTAL ON THE CHARGE OF ENDANGERING AN INJURED VICTIM.

6

III. THE STATEMENTS TO LAW ENFORCEMENT SHOULD HAVE BEEN SUPPRESSED BECAUSE GONZALEZ NEITHER VALIDLY WAIVED HIS <u>MIRANDA</u>[2] RIGHTS NOR PROVIDED THE STATEMENT VOLUNTARILY (Partially Raised Below).

IV. THE CASE SHOULD BE REMANDED FOR RESENTENCING BECAUSE THE SENTENCE IMPOSED BY THE LOWER COURT IS MANIFESTLY EXCESSIVE.

A. The Sentencing Court Improperly Found Aggravating Factors Three and Nine.

B. The Sentencing Court Neglected to Consider Mitigating Factor Eleven and Gonzalez's Status as a Youthful Offender.

C. The Sentence Should Be Reduced Given NERA's Real-Time Consequences.

D. The Conspiracy Conviction Must be Merged With the Conviction for the Underlying Robbery Offense.

E. The Sentencing Court Erred in Imposing a Consecutive Sentence on Count Eleven.

We agree with the thrust of Point I that, because the jury instructions were hopelessly ambiguous and erroneous in important respects, defendant is entitled to a new trial. Because we mandate a new trial, we need not reach Points II and IV, and we find insufficient merit in Point III to require discussion in a written opinion, <u>R.</u> 2:11-3(e)(2).

---

[2] <u>Miranda v. Arizona</u>, 384 <u>U.S.</u> 436, 86 <u>S. Ct.</u> 1602, 16 <u>L. Ed.</u> 2d 694 (1966).

We turn first to the consequence of the judge's repeated use of the phrase "and/or" in the course of her jury charge. Following that, we will discuss defendant's argument that, after properly charging the jury as to the state of mind necessary for second-degree aggravated assault, the judge gave — in response to an inquiry from the jury — erroneous instructions on this same point.

I

Defendant asserts that the jury instructions issued at the trial's conclusion "were permeated with error" and these errors deprived defendant of his fundamental right to a fair trial as guaranteed by the Fifth, Sixth and Fourteenth Amendments of the United States Constitution, as well as the corresponding rights contained in our own state constitution. The State not only substantively responds to the claims of error but also presents for our consideration the additional obstacle that defendant failed to make these arguments at trial.

Pursuant to Rule 2:10-2, arguments not presented at trial are reviewed under the plain error standard, State v. Wakefield, 190 N.J. 397, 473 (2007), which prevents appellate courts from reversing unless the error was "clearly capable of producing an unjust result," State v. Burns, 192 N.J. 312, 341 (2007). Defendant's contentions, however, relate to jury instructions,

which play a critical role in criminal prosecutions, to the extent that it has been well-established that erroneous instructions "are poor candidates for rehabilitation under the harmless error philosophy." State v. Simon, 79 N.J. 191, 206 (1979); see also State v. Maloney, 216 N.J. 91, 105 (2013); State v. Rhett, 127 N.J. 3, 7 (1992); State v. Weeks, 107 N.J. 396, 410 (1987). Of course, in reviewing any claim of error relating to a jury charge, the "charge must be read as a whole in determining whether there was any error", State v. Torres, 183 N.J. 554, 564 (2005), and the effect of any error must be considered "in light of the overall strength of the State's case," State v. Walker, 203 N.J. 73, 90 (2010) (internal quotation marks omitted). In applying these principles, we find the judge's repeated use of the phrase "and/or" — in defining what the jury was obligated to determine — so confusing and misleading as to engender great doubt about whether the jury was unanimous with respect to some part or all aspects of its verdict or whether the jury may have convicted defendant by finding the presence of less than all the elements the prosecution was required to prove.

A

The imprecision of the phrase "and/or" and criticism for its use here and in other jurisdictions has been well-

A-0768-13T2

documented. In <u>Fisher v. Healy's Special Tours Inc.</u>, 121 <u>N.J.L.</u> 198, 199 (E. & A. 1938), our State's highest court at the time described "and/or" as an expression that "has never been accredited in this state as good pleading or proper to form part of a judgment record . . . ." Other courts have been even more critical, referring to "and/or" as a "verbal monstrosity, neither word nor phrase," <u>Employers' Mut. Liab. Ins. Co. v. Tollefsen</u>, 263 <u>N.W.</u> 376, 377 (Wis. 1935), an "inexcusable barbarism[] . . . sired by indolence," <u>Cochrane v. Florida E. Coast R. Co.</u>, 145 <u>So.</u> 217, 218 (Fla. 1932), a "mongrel expression . . . an equivocal connective, being neither positively conjunctive nor positively disjunctive," <u>Holmes v. Gross</u>, 93 <u>N.W.</u>2d 714, 722 (Iowa 1958), and an "abominable invention," <u>American Gen. Ins. Co. v. Webster</u>, 118 <u>S.W.</u>2d 1082, 1084 (Tex. Civ. App. 1941). Wherever found in the decisions of our courts, "and/or" has been recognized as creating ambiguity. See <u>Fisher</u>, <u>supra</u>, 121 <u>N.J.L.</u> at 199 (finding ambiguity in a civil complaint alleging "Healy's Incoporated and/or Healy's Special Tours were the owners of a motor bus and operating the same"); <u>Howell v. Ohio Cas. Ins. Co.</u>, 130 <u>N.J. Super.</u> 350, 355 (App. Div. 1974) (finding ambiguity in an insurance policy describing the insured as "husband and/or wife"); <u>In re Estate of Massey</u>, 317 <u>N.J. Super.</u> 302, 303 (Ch. Div. 1998) (finding

ambiguity in a Will bequeathing one-third of the residue to "my niece . . . and/or [g]randniece"); The Nat'l State Bank of Newark v. Morrison, 7 N.J. Super. 333, 339 (Ch. Div. 1949) (finding ambiguity in a power of appointment of a trust given to the settlor's "widow and/or nephews and nieces"); Ward v. Jersey Cent. Power & Light Co., 136 N.J. Eq. 181, 182 (Ch. 1945) (finding ambiguity in a request reforming a stock certification in favor of "Celia 'and/or' Nora").

We find no reason to take some different approach regarding "and/or" here, particularly when considering the nature of the present inquiry. For example, in the cases cited above, the courts were entitled to attempt to intuit the meaning of the ambiguous statement through consideration of extrinsic evidence or application of accepted canons of interpretation and construction. Here, we have no insight into how the jury may have interpreted each "and/or" that appears in the judge's instructions. There is no extrinsic evidence to examine and no means for determining whether, with each utterance of "and/or," the jury was able to properly interpret it as "and" when the judge should have said "and," and "or" when the judge should have said "or." Moreover, we cannot forget that an individual's liberty interests hung in the balance; we are not concerned here with the disposition of the residue of an estate, Massey, supra,

11

317 <u>N.J. Super.</u> at 303, or the scope of insurance coverage, <u>Howell</u>, <u>supra</u>, 130 <u>N.J. Super.</u> at 355, but with the question of whether defendant was properly convicted and must now spend the next nineteen years in prison.

B

In this case, "and/or" was used to describe those things the jury was required to find to convict defendant on the various counts charged. As observed, defendant does not deny his presence when the crimes were committed, only that his participation was the product of duress. In charging the jury about the relationship of this theory to the State's proofs, the judge gave the following instructions which we quote at length, not to burden the reader, but to demonstrate we are not simply harping on one or even a few stray or inconsequential uses of "and/or":

> Count One of the indictment charges the defendant with the crimes of robbery and Counts Three, Four and Five charge the defendant with the crime of aggravated assault. The State does not allege that the defendant committed the crimes of <u>robbery and/or aggravated assault</u> personally, but, rather, that he is legally accountable <u>for that crime</u> even though it was committed by another.
>
> More specifically, the State alleges that the crimes of robbery <u>and/or</u> aggravated assault were committed by Marcus Zayas and that the defendant is legally accountable for the crimes of robbery <u>and</u> aggravated

12

A-0768-13T2

assault committed by Marcus Zayas because the defendant[], Adrian Aponte and Marcus Zayas, allegedly conspired . . . to commit those crimes.

Now, I've already instructed you or given you the law on both the crimes of robbery and/or aggravated assault as well as the law of conspiracy.

If you are satisfied beyond a reasonable doubt that the State has proven all of these essential elements and that Marcus Zayas committed the crimes of robbery and/or aggravated assault, you must go on to determine the guilt or innocence of the defendant for that same crime.

         . . . .

However, if you're not satisfied beyond a reasonable doubt that Marcus Zayas committed the crimes of robbery and/or aggravated assault, then your inquiry ends here and you must return a verdict of not guilty as to the defendant. Therefore, the instructions given on conspiracy are only for your use if you find beyond a reasonable doubt that Marcus Zayas committed the crimes of robbery and/or aggravated assault.

Our law provides that a person is guilty of an offense if it is committed by his own conduct or by the conduct of another person for which he is legally accountable or both.

A person is legally accountable for the conduct of another person when he is engaged in a conspiracy with such other person and the conduct is within the scope of the conspiracy. Thus, you must decide whether the defendant engaged in the conspiracy with Marcus Zayas and Adrian Aponte to commit the crime of robbery and/or aggravated assault.

13                                    A-0768-13T2

A person is guilty of conspiracy with another person or persons if, with the purpose of promoting or facilitating the commission of a crime, he agrees with such other person or persons that they or one or more of them will engage in conduct which constitutes such crime or an attempt or solicitation to commit such crime or agrees to aid such other person or persons in the planning or commission of such crime or an attempt or solicitation to commit such crime.

Thus, . . . to find . . . that the defendant engaged in a conspiracy with Marcus Zayas, you must be satisfied beyond a reasonable doubt of the following elements:

Number one, that the defendant agreed with Marcus Zayas and Adrian Aponte.

And, number two, that when the defendant so agreed with Marcus Zayas and Adrian Aponte, the defendant's purpose, meaning his conscious object, was to promote it or to make it easier for Marcus Zayas to commit the crimes of robbery <u>and/or</u> aggravated assault.

In this case, after consideration of all the evidence, if you find beyond a reasonable doubt that Marcus Zayas committed the crimes of robbery <u>and/or</u> aggravated assault and also that the defendant conspired with Marcus Zayas and Adrian Aponte to commit those crimes, you must find defendant guilty of the crimes of robbery <u>and/or</u> aggravated assault.

On the other hand, if you have reasonable doubt that Marcus Zayas committed the crimes of robbery <u>and/or</u> assault, that the defendant conspired with Marcus Zayas and Adrian Aponte to commit those crimes or both, you must find the defendant not guilty.

14

[Emphasis added.]

A similarly-phrased instruction was provided as guidance for the jury's consideration of accomplice liability:

> A person is an accomplice of another person in the commission of an offense if, with the purpose of promoting or facilitating the commission of the offense, he solicits such other person to commit it or aids or agrees or attempts to aid such other person in planning or committing it. . . .
>
> In this case, the State alleges that the defendant is equally guilty of the crimes committed by Marcus Zayas because he acted as an accomplice with the purpose that the specific crimes charged be committed.
>
> In order to find the defendant guilty of the specific crimes charged, the State must prove beyond a reasonable doubt each of the following elements:
>
> Number one, that Marcus Zayas committed the crimes of robbery and/or aggravated assault.
>
> I've already given you the definitions of robbery and aggravated assault for all three charges, for all of the charges of aggravated assault.
>
> That [defendant] solicited him to commit them and/or did aid or agree or attempt to aid in planning or committing them.
>
> That this defendant's purpose was to promote or facilitate the commission of the offenses.
>
> That this defendant possessed a criminal state of mind that is required to be proved against the person who actually committed the criminal act.

15

. . . .

If you find that the defendant, with a purpose of promoting or facilitating the commission of the offenses, solicited Marcus Zayas to commit them and/or aided or agreed or attempted to aid him in planning or committing them, then you should consider him as if he committed the crimes himself.

You must consider . . . each offense charged separate from this accomplice charge.

. . . .

In sum, in order to find the defendant guilty of committing the crimes of robbery and/or aggravated assault charges, the State must prove each of the following elements beyond a reasonable doubt:

Number one, that Marcus Zayas committed the crimes of robbery and/or aggravated assault.

That this defendant solicited him to commit them and/or did aid or agree or attempt to aid him in planning or committing them.

That this defendant's purpose was to promote or facilitate the commission of the offenses.

That this defendant possessed the criminal state of mind that is required to be proved against the person who actually committed the criminal act.

Again, I instruct each of you [that] you must consider the accomplice charge separately as to each charge of robbery and . . . the different charges for aggravated assault.

If you find that the State has proven each one of the elements as described above

16                                                          A-0768-13T2

> beyond a reasonable doubt, you must find the defendant guilty of robbery and/or aggravated assault.
>
> If, on the other hand, you find that the State has failed to prove one or more of these elements beyond a reasonable doubt, you must find the defendant not guilty or robbery and/or aggravated assault.
>
> [Emphasis added.]

The repeated use of the offending phrase rendered these instructions ambiguous. Even if we could somehow assume that, in navigating these instructions, the jury accurately guessed when "and/or" should have been "and" and when "and/or" should have been "or" or, even, when "and/or" meant both, as in "robbery or aggravated assault or both," we are further struck by the spectre of a verdict that may have lacked unanimity or may have lacked a finding on one or more elements of the offenses for which defendant was convicted.

C

In considering the possibility that the verdict was the product of less than unanimous findings by the jury, we observe that the nature of the indictment required that the jury decide whether defendant conspired in or was an accomplice in the commission of a robbery, or an aggravated assault, or both. By joining (or disjoining) those considerations with "and/or" the judge conveyed to the jury that it could find defendant guilty

of either substantive offense — which is accurate — but left open the possibility that some jurors could have found defendant conspired in or was an accomplice in the robbery but not the assault, while other jurors could have found he conspired in or was an accomplice in the assault but not the robbery. In short, these instructions did not necessarily require that the jury unanimously conclude that defendant conspired to commit or was an accomplice in the same crime. Such a verdict cannot stand. See State v. Gentry, 183 N.J. 30, 32-33 (2005) (in reversing, on the basis of Judge Coburn's dissent, 370 N.J. Super. 413, 425-28 (App. Div. 2004), the Court held that the defendant's robbery conviction could not stand when the jury found use of force on another but could not agree on which of two individuals the force was used); see also State v. Frisby, 174 N.J. 583, 596 (2002); State v. Parker, 124 N.J. 628, 635 (1991), cert. denied, 503 U.S. 939, 112 S. Ct. 1483, 117 L. Ed. 2d 625 (1992).

The jury was also told that "to find the defendant guilty of committing the crimes of robbery and/or aggravated assault charges, the State must prove [among other things] that Marcus Zayas committed the crimes of robbery and/or aggravated assault." Assuming the "and/or" in this instruction was interpreted as being a disjunctive, it is entirely possible the jury could have convicted defendant of both robbery and

aggravated assault even if it found Zayas committed only one of those offenses, i.e., the jury was authorized, if it interpreted "and/or" in this instance as "or," to find defendant guilty of robbery because it was satisfied the State proved that Zayas committed an aggravated assault.

These and other possibilities militate in favor of a new trial.

D

Clear and correct jury charges are essential for a fair trial, and the failure to provide them may constitute plain error. See State v. Maloney, 216 N.J. 91, 104-05 (2013); State v. Green, 86 N.J. 281, 287 (1981). The repeated use of "and/or" wrung from the charge any clarity it might have otherwise possessed.

It is true defendant did not object at trial to these instructions. But, when viewed as a whole, Torres, supra, 183 N.J. at 564, and in light of the strength of the State's proofs, Walker, supra, 203 N.J. at 90 — which greatly relied on the word of Zayas, the admitted chief actor in these crimes — the jury charge was clearly capable of producing an unjust result, Burns, supra, 192 N.J. at 341. "Contradictory and inconsistent charges are inherently inadequate as they 'create a reasonable likelihood that a juror understood the instructions in an

unconstitutional manner.'" State v. Moore, 122 N.J. 420, 433 (1991) (quoting Francis v. Franklin, 471 U.S. 307, 323 n.8, 105 S. Ct. 1965, 1975 n.8, 85 L. Ed. 2d 344, 359 n.8 (1985)).

Consequently, not even the most generous and forgiving harmless-error philosophy can save this verdict. The instructions were inherently ambiguous because the judge failed to explain in clear English what the jurors were required to decide and, as a result, generated numerous ways in which the jury could have convicted without a shared vision of what defendant did, Gentry, supra, 183 N.J. at 32, or convicted defendant on some charges without finding all the elements were proven beyond a reasonable doubt.

To be sure, the criminal judicial system asks much of jurors; the length of jury charges in many multiple count prosecutions can be truly staggering. In addition, application of our harmless-error philosophy often leads to a generous interpretation of a jury's verdict; indeed, there is always a danger — when a reviewing court excuses error because of the weighty evidence of guilt — that we are essentially "hypothesiz[ing] a guilty verdict that was never in fact rendered," thereby "violat[ing] the jury-trial guarantee." Sullivan v. Louisiana, 508 U.S. 275, 279, 113 S. Ct. 2078, 2081-82, 124 L. Ed. 2d 182, 189 (1993). Consequently, to affirm the

A-0768-13T2

judgment under review, we must, in the final analysis, be satisfied not that we would find defendant guilty if we were to weigh the same evidence, but that the jury — the arbiter of guilt and innocence — actually found defendant guilty based on a shared vision of the evidence and through the application of clear and correct legal principles. Simon, supra, 79 N.J. at 206. We cannot confidently draw such a conclusion. The jury was asked to determine whether defendant conspired or was an accomplice in two consecutive but separate offenses that involved application of discrete legal concepts not easily grasped by laypersons in the best of circumstances. We do not believe the jury was given the proper tools to make those determinations due to the manner in which the judge outlined the issues.

## II

In his Point I(B), defendant argues the judge erred when she instructed that defendant could be found guilty of second-degree aggravated assault if the jury found he attempted to knowingly or recklessly cause seriously bodily injury. We agree, as does the State.[3]

---

[3] In its brief, the State argues that the judge correctly charged the elements but later, in summarizing the charge, spoke erroneously.

The Legislature has declared that an individual may commit second-degree aggravated assault, as charged here, by either attempting "to cause serious bodily injury to another" or by "caus[ing] such injury purposely or knowingly or under circumstances manifesting extreme indifference to the value of human life recklessly causes such injury." N.J.S.A. 2C:12-1(b)(1). To be convicted of an attempted aggravated assault, the defendant must be shown to have "purposely" attempted to cause serious bodily injury. N.J.S.A. 2C:5-1(a)(1). An individual "acts purposely with respect to the nature of his conduct or as a result thereof if it his conscious object to engage in conduct of that nature or to cause such a result." N.J.S.A. 2C:2-2(b)(1). "An attempt is purposeful not only because it is so defined by statute, but because one cannot logically attempt to cause a particular result unless causing that result is one's conscious object, the distinguishing feature of a purposeful mental state." State v. McCoy, 116 N.J. 293, 304 (1989) (internal quotation marks omitted); State v. McAllister, 211 N.J. Super. 355, 362 (App. Div. 1986).

For example, in Rhett, supra, 127 N.J. at 5-6, the Court reversed an attempted murder conviction where the jury was instructed that "'[a] person is guilty of an attempt to commit a crime if . . . acting purposely or acting knowingly the person

purposely engages in the conduct which could constitute the crime.'" The Court reasoned that "[t]he basic error is in the instruction that defendant may be found guilty if he acted 'knowingly,' when only a 'purposeful' intent will suffice"; that "[a]n actor cannot intend an unintended result." <u>Id.</u> at 6, 7. Despite the absence of an objection, the Court found this erroneous instruction to be "fatal" and reversed defendant's conviction. <u>Id.</u> at 7.

Here, the judge first correctly instructed the jury that "[t]o find the defendant guilty of attempting to cause serious bodily injury to another, the State must prove beyond a reasonable doubt that the defendant <u>purposely</u> attempted to cause serious bodily injury to another" (emphasis added). After deliberations commenced, the jury sought clarification and the judge re-read the same correct instructions. In summarizing those instructions, the judge then gave the following erroneous charge:

> [t]he aggravated assault I've just read you involves serious bodily injury. The finding for it would be under two theories:
>
> Either the defendant caused serious bodily injury or attempted to cause serious bodily injury in considering the entire charge along with the requisite state of mind, which was <u>purposely or knowingly or recklessly</u>.
>
> [Emphasis added.]

There is no dispute that this particular instruction was erroneous. The State maintains, however, that the judge twice provided a correct instruction regarding the mental state required for an attempt conviction. The State argues that the judge's later mistaken comments were not intended to describe the mental state requirements for each theory of aggravated assault and, when viewed in light of the entire charge, Torres, supra, 183 N.J. at 564, including the correct earlier instructions, and defendant's failure to object, the error does not warrant the grant of a new trial. We disagree. Indeed, this is the precise type of error found reversible in Rhett despite a similar failure to object. 127 N.J. at 5, 7-8. And although it is certainly true the judge gave earlier proper instructions on this point, we cannot be confident that the jury did not rely on the final instruction. Considering what is at stake, we cannot find solace in the fact that the judge was correct two out of three times in giving this instruction. See Cabana v. Bullock, 474 U.S. 376, 383 n.2, 106 S. Ct. 689, 695 n.2, 88 L. Ed. 2d 704, 714-15 n.2 (1986); State v. Coyle, 119 N.J. 194, 241 (1990).

III

We lastly and briefly address the remaining facets of defendant's Point I, i.e.: (a) the lack of instructions regarding testimony of an arrest warrant or that defendant was incarcerated; (b) the judge mistakenly instructed the jury on the lesser-included offense of theft instead of attempted theft; and (c) some or all four errors referred to in Point I had the cumulative effect of depriving defendant of a fair trial.

As to the first of these arguments, defendant refers to the fact that the jury heard testimony from a detective about: his investigation; how it led to his identification of defendant and Aponte; the issuance of an arrest warrant for defendant; and defendant's arrest. Counsel did not object. In addition, defendant volunteered, while being cross-examined, that he was incarcerated for an extended period of time:

> Q. Have you had some time to go over [your custodial statement] leading up to the trial?
>
> A. Yes, ma'am.
>
> Q. Like, over a year, would you say?
>
> A. I wouldn't say a year. I'd say 16 months when I was incarcerated.

No limiting instruction was sought then or later.

Admissibility of evidence that an arrest warrant or search warrant was issued in a case is not particularly clear. We have

recognized that evidence that a search warrant issued for a defendant's person or residence is highly prejudicial, see, e.g., State v. Alvarez, 318 N.J. Super. 137, 147 (App. Div. 1999); State v. Milton, 255 N.J. Super. 514, 520 (App. Div. 1992), but we also later observed in State v. Williams, 404 N.J. Super. 147, 167 (App. Div. 2008), which dealt with testimony about an arrest warrant, that the Supreme Court likely viewed the matter differently in State v. Marshall, 148 N.J. 89, 240, cert. denied, 522 U.S. 850, 118 S. Ct. 140, 139 L. Ed. 2d 88 (1997), when it found no merit in the argument that such evidence might "influence [a] jury to assume guilt," and concluded that "a properly instructed jury will not presume guilt based on the issuance of a search warrant."

We question whether — had defendant objected — the testimony in question ought to have been permitted here. The fact that defendant was the subject of an arrest warrant or that he was incarcerated prior to trial had no particular relevance; if that evidence had any influence, it was merely to cause prejudice to defendant. If there was an objection, it seems likely the judge would have realized that whatever probative value could be squeezed from those facts was substantially outweighed by the prejudicial impact. N.J.R.E. 403.

The fact remains, however, that defendant did not object. Considering the problem only briefly surfaced here, we find no prejudice of sufficient stature to warrant a new trial on this particular ground. The better practice, despite the lack of an objection, would have been — as suggested by <u>Marshall</u>, <u>supra</u>, 148 <u>N.J.</u> at 240 (holding that "a properly instructed jury" would not be misled by reference to a search warrant) — for the judge to sua sponte advise the jury that the issuance of an arrest warrant or the fact that defendant had been incarcerated should have played no role in their deliberations.[4]

The second aspect we briefly consider is defendant's argument that the judge mistakenly charged theft as a lesser-included offense of robbery, when, in fact, nothing was taken from the victim; defendant argues the jury should have instead been instructed on attempted theft. The State argues in response that the alleged error was of no consequence because the jury convicted defendant of robbery and was not required to consider whether a lesser-included offense was committed. Both parties are correct. The judge charged the wrong lesser-included offense but that mistake had no bearing on the outcome. We assume the mistake will not be repeated when the case is retried.

---

[4] We assume that counsel and the trial court will be careful to ensure that this type of information does not seep into the record at the new trial we have mandated.

Defendant lastly argues in Point I that the cumulative effect of the errors deprived him of a fair trial. See State v. Weaver, 219 N.J. 131, 155 (2014) (recognizing that "[w]hen legal errors cumulatively render a trial unfair, the Constitution requires a new trial"); State v. Orecchio, 16 N.J. 125, 134 (1954) (holding that "where any one of several errors assigned would not in itself be sufficient to warrant a reversal, yet if all of them taken together justify the conclusion that defendant was not accorded a fair trial, it becomes the duty of this court to reverse").

We do not find that the brief mentions of an arrest warrant and defendant's pretrial incarceration, and the mistaken lesser-included-offense charge, were of sufficient magnitude — either viewed separately or collectively — to warrant a new trial. We also do not view these circumstances as adding weight to our determination that the errors referred to in Sections I and II of this opinion compel our mandate of a new trial in this matter.

Reversed and remanded for a new trial.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0768-13T2