**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2309-18

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

MAURICE L. TREAKLE, a/k/a
LAWRENCE WELCH, JAMES
MAYS, MAURICE SMITH,
MAURICE TREAKLE, M.
LINWOOD TREAKLE, and
HAKIM,

     Defendant-Appellant.

_____

Argued March 3, 2021 – Decided July 23, 2021

Before Judges Ostrer and Enright.

On appeal from the Superior Court of New Jersey, Law
Division, Atlantic County, Indictment No. 17-11-2379.

Simone M. Silva-Arrindell, Designated Counsel,
argued the cause for appellant (Joseph E. Krakora,
Public Defender, attorney; Simone M. Silva-Arrindell,
on the briefs).

Nicole Lynn Campellone, Assistant Prosecutor, argued the cause for respondent (Damon G. Tyner, Atlantic County Prosecutor, attorney; Nicole Lynn Campellone, of counsel and on the brief).

PER CURIAM

A jury convicted defendant Maurice Treakle of first-degree robbery, N.J.S.A. 2C:15-1(a)(1); third-degree possession of a knife for an unlawful purpose, N.J.S.A. 2C:39-4(d); and fourth-degree unlawful possession of a knife, N.J.S.A. 2C:39-5(d). Treakle appeals, contending primarily that the trial court committed plain error by omitting an identification charge and by delivering a flawed accomplice-liability charge. We disagree and affirm.

I.

Defendant's convictions stem from a violent mugging in Atlantic City. Late one afternoon, two men robbed Christopher Shirazi at knifepoint, seizing Shirazi's cellphone and over three hundred dollars. The State contends that defendant was one of the robbers. When police confronted him mere moments after the robbery, he possessed Shirazi's cellphone and had just discarded a knife.

At trial, Shirazi testified that on August 26, 2017, he had just completed "a gambling binge" and was walking with "a beautiful girl" when "two guys . . .

2

jump[ed]" him.[1] One of them placed a hand on Shirazi's throat and menaced him with a black-handled "simple pocket" knife. Terror-stricken, Shirazi gave them his cellphone and $326.

When he testified at trial, Shirazi was not altogether clear about which robber took which item. At one point, he agreed that one robber took the money and the other took the cellphone. But he later said that because he was "watching the knife," he "didn't know who took" either item.

In any case, after Shirazi relinquished his property, the knife-wielding robber "clocked" Shirazi in the face, knocking him down. He fell on his hip, his glasses fell to the side, and blood poured down his face. He shut his eyes (at least partially), pretending to be unconscious. He recalled that about two minutes passed.

Meanwhile, one of the robbers removed Shirazi's belt and patted his rear, evidently to see if he hid other valuables there. At some point, Shirazi stealthily looked for (and found) his glasses. When Shirazi got up from the ground, "[b]oth men were there." Shirazi raced from the scene and yelled for help.

---

[1] Shirazi's testimony was not always clear; at times, he appeared to contradict himself. We attempt to derive a coherent narrative from his testimony.

A-2309-18

But within moments, he saw the robbers again. He proceeded to chase the one he thought had threatened him with the knife, whom he believed to have his money and cellphone.

Meanwhile, his call for help apparently prompted someone to call the police to report a fight between two men. Officers Thomas Gilardi and David White responded. Officer Gilardi testified that they were looking for the men when defendant ran "up towards [the] police car," with Shirazi in hot pursuit. Defendant was carrying a green hoodie, but after the officers stopped and exited the car, he dropped the hoodie near the back of the car.

The officers separated the two men. Gilardi dealt with the distraught Shirazi, who kept telling him that defendant had a knife. Gilardi's body-cam recording showed Shirazi pointing to defendant and saying that defendant "robbed him and had punched him."[2] Defendant did not have a knife on his person — but when Gilardi investigated the discarded hoodie, he found "a green folding knife" "sort of just wrapped up underneath" it.

---

[2] The video was admitted into evidence and shown to the jury without audio. Gilardi narrated portions of the video without objection. Cf. State v. Singh, 245 N.J. 1, 17 (2021) (stating that it was error for a police detective to refer to a person depicted in a surveillance video as "the defendant"). Neither party included the video in the record on appeal.

A-2309-18

But defendant did have something else on his person: Shirazi's cellphone. According to Officer White's testimony, defendant claimed that Shirazi "threw the phone at him trying to assault him, and [defendant] caught it and put it in his pocket."[3]

Shirazi was convinced that he had the right man. He testified that "the one that was holding [his] neck with the knife" was the same man "that got locked up by the police." However, during his direct examination, he was unable to identify anyone in the courtroom as his assailant.

But after a break, Shirazi saw defendant returning to the courtroom in shackles. Then, during cross-examination, Shirazi started pointing at defendant while referring to his attacker as "[h]e" or "[h]im" — perhaps implying that at that point, he did identify defendant as one of the robbers. The judge offered to provide, or at least to "consider" providing, a corrective jury instruction, but defense counsel declined, fearing that a corrective instruction "would just magnify this identi[t]y issue."

In closing, defense counsel presented a misidentification defense. He stated, "[T]here's no evidence that my client was there," and told the jurors that

_____

[3] In his statement professing innocence before sentencing, defendant asserted that he had purchased the cellphone from a woman — allegedly, the woman who had accompanied Shirazi.

"even if by some stretch . . . my client was there," they had to determine "what . . . his intent" was. To support the misidentification theory, defense counsel made three points. First, Shirazi failed to identify anyone in the courtroom. Second, defendant allegedly had the cellphone, not the money, but Shirazi allegedly said that the knife-wielder took only the money; Shirazi also said that he chased the knife-wielder. Third, police seized a green-handled knife, but Shirazi said that the robber's knife had a black handle.

After the summations, the judge charged the jury. Two aspects of the instructions are pertinent to this appeal: the court's accomplice-liability instruction and the court's omission of an identification charge. While explaining accomplice liability in the context of robbery, theft from the person (a lesser-included charge), and the applicable weapons offenses, the judge repeatedly used the phrase "and/or." He stated, "In order to find the defendant guilty of the specific crimes charged as an accomplice, the State must prove . . . that an unknown male committed the crime of robbery and/or theft from the person and/or possession of a weapon for an unlawful purpose and/or unlawful possession of a weapon," and "that this defendant solicited the unknown person to commit those offenses and/or did aid or agree or attempt to aid him in planning or committing those offenses." The State had to prove, too, "that this

defendant's purpose was to [promote] or facilitate the commission of those offenses," and that "defendant possessed the [relevant] criminal state of mind."

The judge instructed the jurors that if they found "the defendant, with the purpose of promoting or facilitating the commission of the offenses," to have "solicited an unknown, identified [sic] other person to commit it, or aided or attempted to aid him or her in planning or committing those offenses," they had to "consider him as having committed those offenses himself." Nonetheless, "to convict the defendant as an accomplice to the specific crime alleged," the jurors had to "find that the defendant had the purpose to participate in that particular crime. He must act with the purpose of promoting or facilitating the commission of the substantive offenses with which he is charged." They could also decide that the defendant was not "an accomplice . . . [in] the specific crime charged," but instead acted "with the purpose of promoting or facilitating the commission of some lesser offense than the actual crimes charged in the indictment."

In summarizing those instructions, the court repeatedly used the "and/or" formulation:

> In sum, in order to find the defendant guilty of the crimes of robbery and/or theft from the person and/or possession of a weapon for an unlawful purpose and/or unlawful possession of a weapon the State must prove the following beyond a reasonable doubt: (1) that the unknown or unidentified male committed those

crimes, that is, robbery and/or theft by unlawful taking and/or possession of a weapon for an unlawful purpose and/or unlawful possession of a weapon; (2) that this defendant solicited the unknown person to commit those crimes and/or did aid or agree to aid him in planning or committing those offenses; (3) that this defendant's purpose was to promote or facilitate the commission of those offenses; (4) that this defendant possessed the criminal state of mind that was required to be proved against the person who actually committed the criminal act.

If you find the State has proven each one of the elements described above beyond a reasonable doubt, then you must find the defendant guilty of robbery and/or theft from the person and/or possession of a weapon for an unlawful purpose and/or unlawful possession of a weapon. If, on the other hand, you find the State has failed to prove one or more of these elements beyond a reasonable doubt, you must find the defendant not guilty of robbery and/or theft from the person and/or possession of a weapon for an unlawful purpose and/or unlawful possession of a[] weapon.

The judge did not deliver the model charges on out-of-court or in-court identification, but he did touch on the misidentification issue when delivering the model charge on third-party guilt:

The defendant contends that there is evidence before you indicating that someone other than he may have committed the crime or crimes and that evidence raises a reasonable doubt with regard to the defendant's guilt. In this regard I charge you that a defendant in a criminal case has the right to rely on any evidence produced at trial that has a rational tendency to raise a reasonable doubt with respect to his own guilt[].

8

. . . [T]here is no requirement that this evidence proves or even raises a strong probability that someone other than the defendant committed the crime. You must decide whether the State has proven the defendant's guilt beyond a reasonable doubt, not whether the other person or persons may have committed the crimes.

Just before concluding the jury instructions, the judge invited counsel to offer corrections or clarifications at sidebar. Although parts of the conference were inaudible, the discussion generally related to an "identification charge." Defense counsel evidently suggested that the court instruct the jury on Shirazi's failure to make an in-court identification: "I know an identification was not made in court and there's the identification charge. For the most part it's an identification is made." Apparently ignoring Shirazi's out-of-court identification, defense counsel continued, "In this case it was not made. It may be a little too late to put it -- ". After an inaudible comment from one of the prosecutors, defense counsel clarified that he was thinking of an instruction regarding Shirazi's failure to make an in-court identification, stating, "No, for his lack of identifying him in court." After some more not entirely audible remarks, the prosecutor added that she believed the "10-page ID charge" applied — evidently referring to the full charge that included out-of-court identification.

A-2309-18

Defense counsel did not respond to that statement, and the judge's subsequent remarks were inaudible.

After sending the jurors to deliberate, the judge returned to the identification issue, asking defense counsel, "I think you queried with regard to an identification charge, but I think that applies to out of court identification. Is that what we decided or?" Defense counsel again referred to an instruction on the absence of an in-court identification: "Out of court or where the identification was actually made in the court. When I was reading it I did not see the reference made to a lack of in-court identification or not being able in court to make that identification." The judge then said, "Well again, I let you guys take a look at that charge before I read it to the jury. I mean at this point they've been charged. I do believe, and it's appropriate as part of your argument that you did make that argument."

Later, the jury sent the judge a question: "[I]f we believe the second assailant was the heavy and held the knife, punched, et cetera, is our client guilty as if it were him on all charges, or is he not guilty on all charges?" The prosecutor asked the judge to "remind the jury that each offense with which the defendant is charged needs to be considered in terms of accomplice liability,"

A-2309-18

and defense counsel asked the judge "to direct their attention to the lesser included section" concerning "robbery and the theft from the person."

In response to the jury's question, the judge provided a clear instruction on accomplice liability, eschewing the "and/or." He said, "[I]f you're not considering that Mr. Treakle did it but whether the other person did it and Mr. Treakle is responsible, number one, you have to decide whether the other guy did it or not, okay? Did the other person commit the offense of robbery?" Then he expanded his explanation, discussing individual charges and lesser-included offenses:

> There's robbery as it's defined in 1(a), and then 1(b) is with the weapon. So you need to decide whether the unknown co-defendant committed either of those offenses. If not, then you need to decide whether the unknown defendant committed the offense of theft. You also need to decide in considering the weapons charges whether the unknown defendant committed the offense of possession of a weapon for an unlawful purpose or unlawful possession of a weapon. So each individual charge, number one, it's alleged that Mr. Treakle did it, but it's also alleged that the co-defendant did it and Mr. Treakle is responsible, and you need to consider each one individually.
>
> Now back to the bottom of 18, top of 19. Number one, if we're considering accomplice liability, you have to decide whether the accomplice committed the offense that you're talking about. Number two, you need to decide whether this defendant, who is Mr. Treakle, solicited him to commit it or did aid or agree

11

to attempt to aid him. So did Mr. Treakle, did the co-defendant commit the offense and did Mr. Treakle solicit or aid him in the commission of the offense.

Number three, you need to decide whether Mr. Treakle's purpose was to promote or facilitate the commission of the offense. And then number four, you need to decide whether the defendant possessed the criminal state of mind that's required to be proved against the person who actually committed the offense.

So that is the shorthand language. The other language that I want to direct your attention to is that even if you decide that the co-defendant is guilty of let's say first degree or second degree robbery, you could still find Mr. Treakle guilty of one of the lesser included offenses. If you find the co-defendant guilty of first degree robbery, which again is the robbery with the weapon, Mr. Treakle, assuming that the other requirements of the statute have been met for accomplice liability, he may not be guilty of first degree robbery; he may be guilty of second degree robbery because his accomplice status only goes to the robbery but not the weapon. And in the event that you find him not guilty of the second degree robbery, then you could also find him guilty, you need to consider the theft charge, which means that he is guilty as an accomplice on a theft but not the robbery and all of those additional elements.

Later that day, the jury returned guilty verdicts on all counts.

Defense counsel subsequently filed a motion for a new trial or a judgment notwithstanding the verdict, or, in the alternative, for a judgment molding the verdict. But the court denied the motions. The court also denied the State's

motion for an extended term as a persistent offender, see N.J.S.A. 2C:44–3(a), although defendant's extensive criminal record made him eligible for one.

On count one (first-degree robbery), the court sentenced defendant to fifteen years with eighty-five percent parole ineligibility, to be followed by five years of parole supervision. The court merged the possession-of-a-weapon-for-an-unlawful-purpose charge, but not the simple possession charge, into the robbery count. On the simple possession charge, the court sentenced Treakle to eighteen months, concurrent to the fifteen years.

## II.

Defendant raises the following five issues (which his reply brief largely reiterates) on appeal.

> POINT I
>
> THE TRIAL COURT COMMITTED PLAIN ERROR WHEN IT FAILED TO GIVE THE JURY AN INSTRUCTION REGARDING THE STATE'S BURDEN TO PROVE IDENTIFICATION. (NOT RAISED BELOW).
>
> POINT II
>
> THE TRIAL COURT COMMITTED PLAIN ERROR BY INCLUDING THE AMBIGUOUS PHRASE "AND/OR" IN THE ACCOMPLICE LIABILITY JURY INSTRUCTION, THEREBY DEPRIVING MR. TREAKLE OF HIS RIGHT TO A FAIR TRIAL. (NOT RAISED BELOW).

A-2309-18

POINT III

BECAUSE THE EVIDENCE WAS INSUFFICIENT TO PROVE BEYOND A REASONABLE DOUBT THAT MR. TREAKLE WAS GUILTY OF FIRST-DEGREE ROBBERY, THE TRIAL COURT SHOULD HAVE ENTERED A JUDGMENT OF ACQUITTAL ON COUNT ONE.

POINT IV

IN THE ALTERNATIVE, THE APPEL[L]ATE DIVISION SHOULD MOLD MR. TREAKLE'S FIRST-DEGREE ROBBERY CONVICTION TO A LESSER INCLUDED OFFENSE.

POINT V

FAILURE TO MERGE MR. TREAKLE'S WEAPONS CONVICTIONS WITH HIS FIRST-DEGREE ROBBERY CONVICTION WARRANTS RESENTENCING. (PARTIALLY RAISED BELOW).

A.

We first consider defendant's contention that the trial court committed plain error by failing to deliver an identification instruction.

A trial court must provide an identification instruction if "identification is a 'key issue.'" State v. Cotto, 182 N.J. 316, 325 (2005) (quoting State v. Green, 86 N.J. 281, 291 (1981)). Identification is "a key issue" if "[i]t [is] the major . . . thrust of the defense," especially if "the State relies on a single victim-eyewitness." Ibid. (alterations in original).

Failure to provide that instruction may be plain error. Id. at 326. Plain error is error "sufficient to raise a reasonable doubt as to whether the error led the jury to a result it otherwise might not have reached." State v. Macon, 57 N.J. 325, 336 (1971); see also State v. G.E.P., 243 N.J. 362, 389-90 (2020) (applying this plain error standard).

Defendant bears the burden to show plain error, State v. Morton, 155 N.J. 383, 421 (1998), and this burden is not insignificant: even a truncated identification instruction will, at times, foil a claim of plain error. Cotto, 182 N.J. at 326-27. Furthermore, "[i]f [a] defendant does not object to the charge at the time it is given, there is a presumption that the charge . . . was unlikely to prejudice the defendant's case." State v. Singleton, 211 N.J. 157, 182 (2012).

An argument that an omitted identification charge was plain error "must be evaluated 'in light of the overall strength of the State's case.'" State v. Sanchez-Medina, 231 N.J. 452, 468 (2018) (quoting State v. Galicia, 210 N.J. 364, 388 (2012)); see also Cotto, 182 N.J. at 326 (stating that "[t]he determination of plain error depends on the strength and quality of the State's corroborative evidence," not "on whether defendant's misidentification argument is convincing"). "[I]t is possible that the corroborative evidence against a defendant may be sufficiently strong that the failure to give an

identification instruction does not constitute plain error . . . ." State v. Davis, 363 N.J. Super. 556, 561 (App. Div. 2003).

In Cotto, the Court held that "the strength and quality of the State's corroborative evidence rendered harmless any deficiency in the instruction and preclude[d] a finding of plain error." Id. at 327. In that case, the victim identified the defendant as her former boyfriend. Ibid. Other evidence corroborated her identification: the defendant called the victim's child by name and referred to a hiding spot where the victim kept money. Ibid. The Court also noted that "[a]lthough the court . . . did not use the word 'identification'" in its instruction, the judge did instruct the jury that the State had to prove that defendant was the wrongdoer. Id. at 326-27.

By contrast, in Sanchez-Medina, the Court held that the State did not present enough corroborating evidence to excuse the trial court's failure to deliver an identification instruction. 231 N.J. at 469. In Sanchez-Medina, only one of four victims identified the defendant; no forensic evidence linked the defendant to the crime; victims' descriptions of their assailants and of the attacks varied; and the defendant's statement to police (which he later recanted) offered "some corroboration," but lacked details. Id. at 468-69. When combined with the court's failure to tell the jurors "to ignore provocative evidence about

16

defendant's immigration status," this error prompted the Court to vacate the convictions and remand for a new trial. Id. at 469. The trial court also had instructed the jury that the State had the burden to prove "defendant was the actor who committed the crimes," id. at 468 n.3, but this clarification was not enough to offset the court's omissions.

Here, misidentification was the major thrust of the defense. Therefore, the court should have given an identification instruction, even without a defense request. And Shirazi's in-court gesturing toward defendant increased the need for such an instruction.

However, we are satisfied that the corroborating evidence was sufficient to excuse the court's omission. Most significantly, within moments of the robbery, defendant admitted to police that he had Shirazi's cellphone on his person, and police found a "folding knife" that defendant had discarded near the police vehicle. Defendant's possession of both the instrument of the robbery and its fruits was compelling evidence corroborating Shirazi's out-of-court identification. Defendant's claim that Shirazi threw his cellphone at him was implausible at best. And, crucially, defendant not only possessed the knife, but he also discarded it in police presence, thus demonstrating a consciousness of

guilt. Shirazi's mistake regarding the knife-handle's color was a minor detail; he could easily have mistaken dark green for black.[4]

Furthermore, because the police did not engage in an identification procedure, only instructions regarding so-called estimator variables, see State v. Henderson, 208 N.J. 208, 247 (2011), would have been relevant in this case. And, had the court educated the jury on how those variables affect identification, the jury may well have been even more convinced that Shirazi correctly identified defendant as one of his attackers. Although stress, the presence of a weapon, and possible cross-racial bias may have affected Shirazi's ability to accurately identify defendant as his assailant, other estimator variables may have strengthened Shirazi's perception. The attack lasted long enough to enable Shirazi to get a good look at his attacker, who was not wearing a disguise or mask. The assailants were also close by and, because it was the afternoon, the lighting was good. There was no time for Shirazi's memory to decay, and the assailants were still nearby when Shirazi spotted them and gave chase. Finally, no evidence suggests that Shirazi was intoxicated. See id. at 261-71 (discussing estimator variables and their impact on identification accuracy).

---

[4] The State described the knife as "dark in color"; the knife was in evidence at the trial, thus permitting the jurors to draw their own conclusions. Neither party included a color photograph of the knife in the record on appeal.

Furthermore, during the third-party guilt instruction, the court instructed the jury to consider the possibility that someone other than defendant committed the crimes. And, in the accomplice-liability instruction, the court repeatedly instructed the jury that, in order to render a guilty verdict, it had to find "this defendant" guilty of the elements that the court outlined.

Therefore, we conclude the omission of an identification instruction was not plain error.

B.

Next, we consider defendant's contentions regarding the accomplice-liability instruction. We conclude that by using "and/or" repeatedly, the trial court injected unacceptable ambiguity into its prepared instruction on accomplice liability; however, the court cured any confusion by restating the instruction, without "and/or," when responding to the jury's question.

The trial court's accomplice-liability instruction mirrored the instructions that we found impermissibly confusing in State v. Gonzalez, 444 N.J. Super. 62, 73-76 (App. Div.), certif. denied, 226 N.J. 209, 209 (2016). Although the Supreme Court denied certification, the Court commented that it agreed with our ruling that "and/or" "injected ambiguity into the charge," while limiting "[t]he criticism of the use of 'and/or'" in jury instruction "to the circumstances" of that

19

case. Ibid. In Gonzalez, as here, there was no way to determine "whether, with each utterance of 'and/or,' the jury was able to properly interpret it as 'and' when the judge should have said 'and,' and 'or' when the judge should have said 'or.'" 444 N.J. Super. at 72. We found "the judge's repeated use of the phrase 'and/or' . . . so confusing and misleading as to engender great doubt about whether the jury was unanimous . . . or whether the jury may have convicted defendant by finding the presence of less than all the elements the prosecution was required to prove." Id. at 71. We would reach the same conclusion here, had the judge said nothing more on the subject of accomplice liability.

But when deciding if there was plain error, we must read the charge "as a whole" and avoid considering parts in isolation. State v. Jordan, 147 N.J. 409, 422 (1997). Here, the jury requested clarification of the accomplice-liability charge, and the trial judge responded appropriately. See State v. Savage, 172 N.J. 374, 394 (2002) (stating "[i]t is firmly established that '[w]hen a jury requests a clarification,' the trial court 'is obligated to clear the confusion'") (second alteration in original) (quoting State v. Conway, 193 N.J. Super. 133, 157 (App. Div. 1984)). The court's clarification avoided the ambiguity that plagued the initial charge and removed the possibility that the jury would render

20

a non-unanimous verdict or a verdict based on fewer than all essential elements of a crime.

C.

Defendant's arguments that the trial court should have entered a judgment of acquittal or that the appellate court should mold the verdict on the first-degree robbery charge lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(2). Ample, if not overwhelming, evidence supported the jury's verdict. See State v. Fuqua, 234 N.J. 583, 590-91 (2018) (stating that a trial court must deny a motion to acquit even if, after "giving the State the benefit of all of its favorable testimony as well as all of the favorable inferences which reasonably could be drawn therefrom," the evidence is merely "sufficient" to support the verdict); State v. Lopez, 187 N.J. 91, 103 (2006) (stating that where there is enough "evidence to create a jury issue" regarding the greater offense, "molding the verdict to the lesser offense . . . [is] unwarranted").

Lastly, we agree with defendant's contention (with which the State concurs) that the trial court should have merged his fourth-degree unlawful-possession-of-a-knife conviction with his robbery conviction. An essential element of the fourth-degree offense is possession of an item "under circumstances not manifestly appropriate for such lawful uses as it may have."

21

N.J.S.A. 2C:39-5(d). Here, the only evidence of such circumstances pertained to defendant's use of the knife in a robbery. Therefore, the two offenses should merge, just as a conviction for possession of a weapon for an unlawful purpose must merge into the substantive offense where the defendant's only unlawful purpose is to use the weapon in committing the substantive offense. See State v. Romero, 191 N.J. 59, 79-80 (2007) (requiring merger of conviction for possession of a weapon for an unlawful purpose into conviction for robbery).

Affirmed as to conviction; remanded for resentencing. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2309-18