221 N.J. Super. 387 (1987)
534 A.2d 744
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
FORREST L. BOYER, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Submitted October 26, 1987.
Decided December 8, 1987.
*390 Before Judges PETRELLA, DREIER and BAIME.
Alfred A. Slocum, Public Defender, Attorney for appellant (Alan I. Smith, Designated Counsel, of counsel and on the brief).
W. Cary Edwards, Attorney General of New Jersey, Attorney for respondent (Edward R. Bonanno, Deputy Attorney General, of counsel and on the brief).
The opinion of the court was delivered by DREIER, J.A.D.
Defendant appeals from his conviction of felony murder, N.J.S.A. 2C:11-3a(3); armed robbery, N.J.S.A. 2C:15-1; attempted *391 distribution of controlled dangerous substances, N.J.S.A. 24:21-19a and 2C:5-1; terroristic threats, N.J.S.A. 2C:12-3b; possession of a weapon for an unlawful purpose, N.J.S.A. 2C:39-4a and unlawful possession of a handgun, N.J.S.A. 2C:39-5b. He was sentenced to a term of life with a 30-year parole ineligibility for the felony murder, to a consecutive 10-year term with a four-year period of parole ineligibility for the possession of the weapon for an unlawful purpose, and to concurrent five-year terms for each of the offenses of attempted distribution, terroristic threats and unlawful possession of a handgun. The armed robbery conviction was merged into the felony murder. Defendant's total sentence, therefore, was life plus 10 years with a 34-year period of parole ineligibility.
At approximately 12:30 a.m. on August 3, 1984, Dawn Andre and the homicide victim, Clarence Maxwell, were sitting on Dawn's father's car which was parked in front of Dawn's house. Jihad Muhammed (a/k/a Dale Mayo) and defendant Forrest Boyer asked Dawn's sister, Debbie, who was sitting on some steps across the street, if she wanted to buy some drugs. When she declined, Muhammed crossed the street and asked the victim and Dawn if they wanted to purchase some. They declined, but Dawn went into her house to ask her mother if she wanted amphetamines which she sometimes used as diet pills. When Dawn came back outside to tell Muhammed that her mother did not want to purchase any pills, Dawn overheard Muhammed say to Clarence "I'm going to remember you." Muhammed then called to defendant, who was still talking about drugs with Debbie, to come over. Muhammed and defendant talked about Dawn for a few minutes, and then they left.
Approximately twenty minutes later, Muhammed and defendant returned, Muhammed armed with a pistol and a shotgun. Muhammed pointed the pistol at Dawn and the victim and told them "don't move or I'll blow your head off." Muhammed began to argue with Clarence about buying drugs. Dawn tried to run into her house to get her father, but Muhammed fired a *392 shot at the ground by her feet. Muhammed then handed the pistol to defendant who put it in his waistband.
Defendant grabbed Dawn's pocketbook which was on the roof of Dawn's father's car and started emptying the purse out on Clarence's car which was parked right behind Dawn's father's car. Although Dawn testified that nothing was taken from her purse, defendant confessed to the police that he "took the reefer out of the pocketbook."
As defendant was searching through Dawn's purse, Thomas Vincent, the boyfriend of Dawn's sister, opened the front door of the Andre house. Muhammed threatened to kill Thomas, so Thomas went back into the house and woke up the Andre family. Then, Muhammed shot Clarence with the shotgun. Ronald Andre, Dawn's father, came outside to see what all the noise was about. Muhammed yelled to Mr. Andre that he had better go back into the house or else he would shoot him. Then, defendant turned and said, "I'll shoot this one myself." Mr. Andre went back into his house, and Muhammed and defendant walked away.
Defendant voluntarily turned himself in to the police on August 9, 1984. Clarence Maxwell died on August 29, 1984 from complications resulting from the gunshot wound.
Defendant's jury selection was initially completed on May 7, 1985, and the trial began the same day. On May 8, 1985, the court denied defendant's motion for a mistrial based on the court's decision to reopen the jury selection process to replace a juror dismissed for cause after opening statements.
Defendant raised the following points on appeal.
POINT I
The court abused its discretion in the procedure used in selecting the jury.
(A)
As the jury was impanelled and sworn and as opening statements were completed it was improper to reopen the jury selection process.

*393 (B)
Defendant's conviction should be reversed as the jury selection was contrary to double jeopardy principles as delineated by New Jersey Courts.
POINT II
The court erred in admitting portions of defendant's statement in evidence.
POINT III
The court's charge to the jury was defective (not raised below).
(A)
The court committed reversible error by not charging the jury on manslaughter.
(B)
The court's charge on aiding and abetting prejudiced defendant.
POINT IV
The sentence imposed is manifestly excessive and not supported by the record below.

I
During the voir dire on May 7, 1985, the potential jurors were not informed of defendant's address. After jury selection, the attorneys made their opening statements and court was adjourned for the night. On the next morning, the prosecutor informed the court that in reviewing his notes, he discovered that juror number 15 lived at 1116 Princess Avenue in Camden and that defendant lived at 1156 Princess Avenue.
The judge granted the prosecutor's request to tell the jury defendant's address and to ask all of the jurors if any of them knew the address or members of the family. Juror 15 stated that although he may have known members of defendant's family, his ability to be fair and impartial would not be affected. Granting a further request by the prosecution, the judge asked juror 15 if he would be able to be fair knowing that regardless of the outcome of the trial, he could be confronted by defendant's family. When juror 15 indicated that if he were to be intimidated, it might affect his ability to be fair, the court removed the juror for cause. Defendant asked for a mistrial *394 because juror 15 was the only black juror on the panel.[1] The judge denied defendant's motion, but instead of proceeding with 14 jurors, the judge reopened the jury selection process to replace juror 15, inter alia because the jury was all-white, and because he wanted 15 jurors in this protracted case. After the new juror was selected, the attorneys were given the option of reopening or having their opening statements read to the new juror. At their request, the court reporter read the opening statements to the new juror.
Defendant contends that because the jury was sworn and opening statements were completed, the court improperly reopened the jury selection process to replace the excused juror. Defendant also argues that because juror 15 was replaced with a new juror, defendant was twice placed in jeopardy.[2]
Defendant does not contest the fact that before any evidence is presented the judge has discretionary authority to reopen the examination of a juror who has already been sworn and to excuse the juror for cause. R. 1:8-3(b); State v. LaPierre, 39 N.J. 156, 173, cert. den. 374 U.S. 852, 83 S.Ct. 1920, 10 L.Ed.2d 1073 (1963). Defendant argues, however, that because the attorneys already had given their opening statements, the judge disregarded R. 1:8-2(d) which provides in pertinent part that "[i]f a juror is excused after he has been sworn but before any opening statement is begun, another juror may be impanelled and sworn to take his place." (emphasis supplied).
*395 Although the double jeopardy clauses in the United States Constitution and the New Jersey Constitution vary, the distinction has been held to be unimportant, and the New Jersey Supreme Court has held that the clauses are coextensive in application. State v. Rechtschaffer, 70 N.J. 395, 404 (1976); State v. Laganella, 144 N.J. Super. 268, 286 (App.Div.), app. dism. 74 N.J. 256 (1976). Jeopardy attaches in a jury trial after the jury is impanelled and sworn. Crist v. Bretz, 437 U.S. 28, 37-38, 98 S.Ct. 2156, 2162, 57 L.Ed.2d 24 (1978); State v. Lynch, 79 N.J. 327, 341 (1979). But, before the double jeopardy clause will bar any further proceedings, there must be a second proceeding. "Unless there is a new trial, there cannot be a `second' jeopardy." United States ex rel. Young v. Lane, 768 F.2d 834, 838 (7th Cir.), cert. den. 474 U.S. 951, 106 S.Ct. 317, 88 L.Ed.2d 300 (1985). The issue here, therefore, is whether the proceeding before the initial 15 jurors and the proceeding before the jury with the replaced juror legally constituted separate proceedings.
The statutory prohibition against double jeopardy is embodied in N.J.S.A. 2C:1-9d.

N.J.S.A. 2C:1-9; When Prosecution Barred by Former Prosecution for the Same Offense. A prosecution of a defendant for a violation of the same provision of the statutes based upon the same facts as a former prosecution is barred by such former prosecution under the following circumstances:
* * * * * * * *
d. The former prosecution was improperly terminated. Except as provided in this subsection, there is an improper termination of a prosecution if the termination is for reasons not amounting to an acquittal, and it takes place after the jury was impaneled and sworn or, in a trial before a court without a jury, after the first witness was sworn but before findings were rendered by the trier of facts. Termination under any of the following circumstances is not improper:
(1) The defendant consents to the termination or waives, by motion to dismiss or otherwise, his right to object to the termination.
(2) The trial court finds that the termination is necessary because of the failure of the jury to agree upon a verdict after a reasonable time for deliberation has been allowed.

*396 (3) The trial court finds that the termination is required by a sufficient legal reason and a manifest or absolute or overriding necessity. [Emphasis supplied].
It would be easy to say that since the trial continued, it was not "terminated." But that answer would be simplistic, since it could be applied in a situation where witnesses had already testified when jurors fell ill, and the judge determined merely to substitute newly selected jurors over a defendant's request for a mistrial. In such a case, a new jury in a totally new proceeding could permissibly consider the matter under N.J.S.A. 2C:1-9d(3). But the first jury augmented by its new members could not continue. Technically, in such a case, the defendant would have been put in jeopardy before two different juries and, therefore, the decision of the second could not stand. The termination of the first portion of the trial would have been proper, however, and the defendant could be retried. Therefore, the jury would be barred from proceeding, not on double jeopardy grounds, but on the basis that the same jurors must all hear the same evidence and instructions and render a verdict solely on that basis. Although we have discovered no case directly determining this issue, the necessity for the continuity of the same jurors lies at the heart of our jury system.
What we must determine here is whether the making of the opening statements after jeopardy had attached constituted such progress of the trial that the decision of the panel augmented by the new juror violated these principles. The matter did not proceed to the point where evidence was admitted and considered by the jury. Therefore, we must keep in mind Judge Fritz' admonishment in State v. Laganella, supra, that it
is inescapable under both the United States Supreme Court cases and those of the State of New Jersey: each case must turn upon its own facts in a determination as to whether the bar of double jeopardy is to be applied.... This caveat serves well to alert us to the fact that resolution of double jeopardy problems depends on far more than a simple determination of when `jeopardy attaches,' said in earlier cases to occur not later than when a jury was empanelled and often accorded essentially dispositive weight.... Consequently, we have become increasingly candid in our facing up to an awareness that *397 important interests other than those of defendant alone are involved in the trial of criminal cases. State v. Rechtschaffer, supra. This salutary truth has caused us to reconsider the doctrine of double jeopardy more in terms of the evil against which it was designed to forfend and less as a matter of slavish adherence to ritualistic formula.... It is sufficient for our purposes to note that clearly the mere empanelment of a jury and commencement of a case does not automatically provide a criminal defendant with a bar to further prosecution in certain circumstances. [144 N.J. Super. at 287; Citations omitted].
The issue resolves itself to a determination of whether any vital interest of the defendant is affected when a single juror hears counsels' opening statements either read by the reporter or repeated by counsel, as opposed to having heard the original opening statements in the company of the other jurors.
We know that the swearing of the jury itself does not create a bar to replacement, since R. 1:8-2(d) permits the impanelling of a replacement juror before an opening statement. We also know that jurors may be challenged for cause even after the opening statements, but before evidence is presented. R. 1:8-3(b). This provision was included in R.R. 3:7-2(d) of the 1960 rule amendments. The former R.R. 3:7-2(b) permitted the excuse of a juror "before evidence is presented." The report of the Rules Committee gave the following as its reason for the new provision allowing the impanelling of a new juror "before the state has commenced its opening statement:"
[The code] permits the court to excuse any juror after trial commences provided 12 are left at the conclusion of court's charge. R.R. 3:7-2(b) permits the excuse of a juror after being sworn but before evidence is presented. Obviously, in protracted cases where a member of the jury is sworn and then is excused, the impaneling process should continue until the authorized ... jurors are seated. The proposed change would clarify this procedure. [83 N.J.L.J. 152 (March 14, 1960)].
The change was explained by reference to R.R. 3:7-2(b) without recognition of the difference in language between paragraph (d)'s "opening statements" and paragraph (b)'s "presentation of the evidence." There is no indication in the comment that a different standard was intended.
Although R. 1:8-2(d) permits the replacement of jurors only before the opening statements, the opening statements themselves are not evidence. R. 1:7-1(a). Therefore, the substantive *398 danger of proceeding with jurors who have heard different versions of the evidence is only encountered after the opening statements and once evidence is presented. This conclusion is supported by the Rules Committee report, supra. We, therefore, determine that if a juror or jurors must be removed prior to the presentation of any evidence but during or after opening statements, so long as a replacement juror is completely acquainted with the opening statements, as was done here by giving the parties the option of either reopening before the jury or having the statements read back by the reporter, there is neither a constitutional nor statutory impediment to proceeding with the newly augmented panel.

II
Defendant makes three arguments for the exclusion of defendant's August 13, 1984 transcribed oral statement: The trial court improperly admitted defendant's confession because defendant did not testify and his credibility was not in issue; Dawn denied that defendant took anything from her, and no independent evidence exists to show that something was removed from her purse; and the trial court failed to make the requisite findings to admit a defendant's exculpatory statement.
On August 13, 1984, defendant gave a statement which while largely exculpatory as to the murder, admitted that before Muhammed shot Clarence, defendant removed a "nickel" (colloquial for a $5) bag of marijuana from Dawn Andre's pocketbook. Defendant argues that this portion of the confession was improperly admitted because an exculpatory statement is not admissible unless defendant takes the stand and testifies about the contents of the statement. This simply is not a correct statement of law. Where a defendant does not testify, his prior statements can have no bearing on his credibility, and are generally excluded if offered by him. State v. Ryan, 157 N.J. Super. 121, 126-127 (App.Div. 1978). Under *399 Evid.R. 63(7), however, the State may introduce any relevant statement made by defendant, subject to the requirements imposed by Evid.R. 8(3). The particular section of defendant's statement that the prosecution admitted was certainly relevant to the armed robbery charge. Defendant could augment the portion of his statement with other parts if they were relevant to the section offered by the State. State v. Caccavale, 58 N.J. Super. 560, 566 (App.Div. 1959).
Defendant also argues that the statement was inadmissible because defendant's credibility was not in issue. The State did not use the confession to impeach defendant's credibility; the State used the confession as substantive evidence to prove a robbery.
Defendant next contends that the statement was inadmissible because there was no independent evidence to show that anything was removed from Dawn's purse. The trial judge, relying on State v. Johnson, 31 N.J. 489, 505 (1960), found that the State could rely on an otherwise corroborated confession without providing independent proof of the robbery:
In our view, the State satisfied the burden placed upon it by independently proving that death and by producing corroborative evidence tending to establish that when the defendants confessed they participated in the holdup and killing and they were telling the truth.
It is true that the corroboration rule requires that
the State must introduce independent proof of facts and circumstances which strengthen or bolster the confession and tend to generate a belief in its trustworthiness, plus independent proof of loss or injury.... [State v. Lucas, 30 N.J. 37, 56 (1959)].
Yet in Johnson, the court broadly construed the independent proof requirement, stating that "independent proof of the felony in a felony-murder prosecution is not necessary if proof of the felony can be gathered from a corroborated confession." 31 N.J. at 505. See also State v. Krieger, 193 N.J. Super. 568 (App.Div. 1983), rev'd on dissent below, 96 N.J. 256, cert. den. 469 U.S. 1017, 105 S.Ct. 431, 83 L.Ed.2d 358 (1984); State v. Zarinsky, 143 N.J. Super. 35, 54 (App.Div. 1976), aff'd 75 N.J. 101 (1977). In determining how much corroborative proof is *400 enough, we are guided by State v. Krieger's statement that the rationale for the rule is "to avoid the danger of convicting a defendant solely out of his own mouth of a crime that never occurred or a crime committed by someone else." 193 N.J. Super. at 580 (quoting State v. Johnson, 31 N.J. at 502-503).
In this case, the State was unable to provide any independent corroboration of defendant's statement that he took a "nickel bag" of marijuana from Dawn Andre's handbag. Nevertheless, the trial court found that the State provided proof independent of other facts contained in the confession, for example that Clarence was shot, and that at least three witnesses testified that defendant looked through Dawn's bag. In addition, all of the witnesses corroborated defendant's statement that he was at the scene of the shooting and that he arrived and fled with Muhammed. Even though Dawn testified that nothing was taken from her pocketbook, there was enough evidence to establish that defendant was telling the truth when he said he took a bag of marijuana from her pocketbook.
Defendant's final argument against the admissibility of his statement is that the trial court failed to find that defendant's statement inherently constituted two separable statements, a prerequisite he claims is necessary before only a portion of a statement can be admitted, citing State v. Abrams, 140 N.J. Super. 232, 234-235 (App.Div. 1976), aff'd o.b. 72 N.J. 342 (1977). The case is inapposite. There, the Appellate Division admitted not only a part of the statement which directly incriminated the declarant, but also a part which was exculpatory to a codefendant. In the context of the whole statement, the exculpatory part of that statement also intensified the criminal responsibility of the declarant and was, therefore, separately admissible under Evid.R. 63(10) as a declaration against the declarant's penal interests.
Here, although the State only sought to introduce one small, inculpatory portion of defendant's confession, the trial court was under no independent duty to admit the whole statement *401 sua sponte; and defendant did not attempt to admit the whole confession. If he did, the admission of any such additional portion would have been limited by the completeness rule, noted earlier. State v. Caccavale, supra, 58 N.J. Super. at 566.

III
Defendant argues that the trial court had a duty sua sponte to provide a manslaughter charge to the jury. The State contends, first, that a manslaughter charge was not available to defendant because he was charged with felony murder, and, second, the facts did not clearly indicate that such a charge was appropriate. Since this question was not raised in the trial court, we must apply the plain error rule and not reverse unless the claimed error is capable of producing an unjust result. R. 2:10-2.
Felony murder only requires a showing that a death was caused during the commission of, attempted commission of or flight from the statutory list of felonies. State v. Darby, 200 N.J. Super. 327, 331 (App.Div. 1984), certif. den. 101 N.J. 226 (1985). If the jury had exonerated defendant on the robbery or attempted robbery charges, then the defendant could not have been convicted of felony murder. Since the State never contended that defendant fired the gun that killed the victim, defendant, as a principal, could not have been convicted of manslaughter or aggravated manslaughter. Further, State v. Powell, 84 N.J. 305, 318 (1980), unequivocally states that regardless of the requests made by counsel, the trial court has a duty to charge the applicable law based on the facts. But as reiterated in State v. Choice, 98 N.J. 295, 299 (1985), Powell only requires a sua sponte jury charge on manslaughter when the facts "clearly indicate the possibility that the crime was manslaughter...." Powell, supra, 84 N.J. at 318. A court should not charge the jury as to a crime if that verdict would clearly be unwarranted by the record. State v. Crisantos (Arriagas), 102 N.J. 265, 273 (1986). Here, defendant's argument that the trial *402 court committed reversible error because it failed to charge manslaughter is inconsistent not only with the prosecution's theory of the case, but also with all of the witnesses' testimony.
Defendant argues that the trial court should not have instructed the jury on accomplice liability because there was no factual basis for that charge. Since the defense did not raise this issue at the trial level, we also must review this point applying a standard of plain error. R. 2:10-2.
The judge charged accomplice liability in his explanation of the State's contention that defendant was guilty of robbery or attempted robbery as either a principal or an accomplice. The judge may charge the jury on accomplice liability even if the indictment did not expressly allege accomplice liability as long as there is a rational basis in the evidence for accomplice liability. State v. Hakim, 205 N.J. Super. 385, 388 (App.Div. 1985); see State v. Jacques, 99 N.J. Super. 230, 236 (App.Div.), aff'd 52 N.J. 481 (1968), cert. den. 395 U.S. 985, 89 S.Ct. 2138, 23 L.Ed.2d 774 (1969). The record justifies his instruction. See State v. Hakim, supra, 205 N.J. Super. at 389. The testimony that Muhammed gave defendant a gun which defendant put in his pants, that defendant searched through Dawn's purse, and that both defendants threatened Dawn's father after Clarence was shot, all supported an inference of accomplice liability.
Defendant also alleges that the charge was defective because "the jury was not given the opportunity to find that if defendant did aid and abet Mr. Muhammed, he still may not have been guilty in the same degree as Muhammed." Defendant then states as a general principle that if codefendants participate in the same crime with different mental states, the degree of guilt of the participants is different, citing State v. Fair, 45 N.J. 77 (1965). The judge instructed the jury that "one cannot be held to be an accomplice unless you find as a fact that he possessed the same criminal state of mind with respect to robbery that is required to be proven against a person who actually committed the act." This statement was generous to *403 defendant. See N.J.S.A. 2C:2-6b(1), and Cannel, Title 2C, Comments 5 and 7 to N.J.S. 2C:2-6 (1987 ed.) at 97, 98-100. The jury was not unfairly instructed on the requisite intent for robbery whether defendant was found to be an accomplice or the actual robber.

IV
The judge merged the murder and robbery charges and sentenced defendant to a life sentence with a 30-year parole ineligibility. Defendant also received a concurrent five-year custodial term for the attempted distribution count, a concurrent five-year custodial term for the terroristic threats count, a consecutive 10-year custodial term with a four-year parole ineligibility for the possession of a weapon for an unlawful purpose count, and a concurrent five-year custodial term for the unlawful possession of a handgun count. Defendant requests this court to modify his sentence because the judge allegedly committed error by (a) failing properly to discuss and to balance the aggravating factors that justified these sentences; (b) including the victim's death as an aggravating factor; and (c) sentencing defendant to consecutive terms.
Defendant contends that the court failed to "place on the record which aggravating factors it relied upon to justify the imposition of this additional period of parole ineligibility." Defendant's argument can properly focus only on the sentence and period of parole ineligibility for the possession of a weapon for an unlawful purpose. The only two charges that affected defendant's actual jail sentence are the consecutive terms for the murder conviction and this weapons count, and the judge exercised no sentencing discretion for the murder conviction since a mandatory minimum 30-year sentence is required by statute. N.J.S.A. 2C:11-3(b). Under the second degree weapons charge, the judge has some discretion because the judge could have sentenced defendant to a range of between 5 and 10 years, N.J.S.A. 2C:43-6a(2). Under the Graves Act, N.J.S.A. *404 2C:43-6(c), defendant is required to serve a minimum term of between 1/2 and 1/3 of the sentence.
The trial judge devoted five pages in the transcript to a discussion of the aggravating and mitigating factors. The judge mentioned a total of five aggravating factors. Two of the factors, the nature and circumstances of the offense and the need for deterrence, are not explained by the court. Two other factors, the risk of a repeat offense and the extent of prior criminal record, were developed together; however, the judge discussed them at great length. One factor, gravity and seriousness of harm inflicted on the victim, defendant argues was inappropriately assessed, although as we note infra, the judge committed no error. The Judge developed in detail the factor that the defendant is likely to commit another offense. After enumerating all of the factors, the judge stated on the record that "I'm convinced beyond any possible doubt that the aggravating factors so substantially and truly outweigh the mitigating factors so as to justify ... the imposition of a sentence in excess of the presumptive term and to add some additional period of parole ineligibility."
The case law indicates that "[m]erely enumerating those factors does not provide any insight into the sentencing decision, which follows not from a quantitative, but from a qualitative, analysis." State v. Kruse, 105 N.J. 354, 363 (1987) (citing State v. Morgan, 196 N.J. Super. 1, 5 (App.Div.), certif. den. 99 N.J. 175 (1984)). Here, the judge gave the following as his first aggravating factor: "The nature and circumstances of the offense are extremely aggravating factors." But while the judge never explained during sentencing why the circumstances surrounding this armed robbery and murder are any more depraved than any other armed robbery or murder, the judge had explained the background in his introductory recital of the facts. See State v. Porter, 210 N.J. Super. 383, 396 (App.Div.), certif. den. 105 N.J. 556 (1986).
*405 While the court justified both the length of defendant's sentence and the imposition of parole ineligibility periods in a single statement, separate considerations must govern the imposition of a maximum sentence and a period of parole ineligibility, and an explanation of each of these considerations is necessary. Kruse, supra, 105 N.J. at 358-359. If there is a preponderance of aggravating factors, then the court may adjust the sentence higher than the presumptive term. Ibid. The court is also required to describe the balancing process leading to the sentence. Id. at 360. Then the court must determine whether there should be a period of parole ineligibility. "Periods of parole ineligibility are the exception and not the rule." State v. Martelli, 201 N.J. Super. 378, 382-383 (App.Div. 1985), quoted in Kruse, supra, 105 N.J. at 359. To impose a period of parole ineligibility, the court must be "clearly convinced that the aggravating factors substantially outweigh the mitigating factors...." N.J.S.A. 2C:43-6b. If the court imposes a period of parole ineligibility, then "the court should state the reasons for the sentence, indicating why it is clearly convinced that the aggravating substantially outweigh the mitigating factors." Kruse, supra, 105 N.J. at 362. A fair reading of the sentencing transcript shows that the judge was in substantial compliance with the applicable statutory provisions. Porter, supra, 210 N.J. Super. at 396.
Defendant further alleges that the victim's death was inappropriately considered as an aggravating factor for a murder sentence. State v. Pavin, 202 N.J. Super. 255, 267 (App. Div. 1985). See also State v. Vitale, 102 N.J. 350 (1985). If the judge was only sentencing defendant for the murder conviction, then the judge's assessment of the victim's death would have been clearly erroneous. However, in this case, the judge was sentencing defendant for five additional convictions, and for one of those counts, possession of a weapon for an unlawful purpose, the judge was planning to sentence consecutively and to impose a period of parole ineligibility. The victim's death *406 was not an inappropriate factor to consider in sentencing defendant on the weapons count.
Defendant's final argument is that the court improperly sentenced defendant to consecutive terms. The guidelines in State v. Yarbough, 100 N.J. 627, 643-644 (1985), cert. den. 475 U.S. 1014, 106 S.Ct. 1193, 89 L.Ed.2d 308 (1986), were specifically adopted for the sentencing of an offender "who has engaged in a pattern of behavior constituting a series of separate offenses or committed multiple offenses in separate, unrelated episodes." Id. at 644. The two consecutive sentences that defendant contests are for the felony murder conviction and the possession of a weapon for an unlawful purpose conviction. The weapons conviction resulted from defendant's threats and gestures to Mr. Andre which occurred after the victim was shot. The judge sentenced defendant to a consecutive term for this Graves Act offense, because "the Court was absolutely convinced that if Mr. Andre did not heed the defendant's warning he most likely would have been shot by either this defendant or Jihad Muhammad." The judge extensively discussed both the "separateness" of the offenses and most of the Yarbough guidelines. We find no basis to interfere with this sentence. State v. Roth, 95 N.J. 334, 364-366 (1984).
Affirmed.
NOTES
[1] Although defendant objected at trial to the juror's removal for cause because the juror was the only black juror, defendant did not make this argument on appeal. On appeal, defendant only contested the judge's procedure for replacing the juror.
[2] R. 3:10-2 provides that unless defendant raises a double jeopardy defense before trial, the defense is waived unless good cause is shown. Defendant objected to the judge's decision to reopen jury selection, but he did not then object on double jeopardy grounds. The "good cause" that defendant asserts is apparent, i.e., he could not know before trial that he would need to raise a double jeopardy defense.