NOT FOR PUBLICATION WITHOUT THE
 APPROVAL OF THE APPELLATE DIVISION
 This opinion shall not "constitute precedent or be binding upon any court."
 Although it is posted on the internet, this opinion is binding only on the
 parties in the case and its use in other cases is limited. R.1:36-3.

 SUPERIOR COURT OF NEW JERSEY
 APPELLATE DIVISION
 DOCKET NOS. A-2329-14T2
 A-3012-14T2

STATE OF NEW JERSEY,

 Plaintiff-Respondent,

v.

HECTOR R. DELGADO, a/k/a VICTOR
DELGADO,

 Defendant-Appellant.
_________________________________

STATE OF NEW JERSEY,

 Plaintiff-Respondent,

v.

DARRIN S. BRYANT, a/k/a DARREN BRYANT
and SHAWN BRYANT,

 Defendant-Appellant.
_________________________________

 Submitted April 3, 2017 – Decided August 24, 2017

 Before Judges Sabatino and Nugent.

 On appeal from Superior Court of New Jersey,
 Law Division, Camden County, Indictment No.
 13-06-1842.
 Joseph E. Krakora, Public Defender, attorney
 for appellant Hector Delgado (Jaime B.
 Herrera, Assistant Deputy Public Defender, of
 counsel and on the brief).

 Helmer, Conley & Kasselman, PA, attorneys for
 appellant Darrin Bryant (Patricia B. Quelch,
 of counsel and on the brief).

 Mary Eva Colalillo, Camden County Prosecutor,
 attorney for respondent (Linda A. Shashoua,
 Assistant Prosecutor, of counsel and on the
 briefs in A-2329-14 and A-3012-14).

PER CURIAM

 Co-defendants Hector R. Delgado, Darrin S. Bryant, and James

O. Coles beat and injured Daniel DeChurch in a Chesilhurst bar,

The Last Chance Saloon. Delgado and Bryant appeal from their

respective judgments of conviction: Delgado for disorderly persons

simple assault and third-degree criminal restraint, for which a

judge sentenced him to an aggregate forty-two month prison term;

Bryant for third-degree aggravated assault and third-degree

criminal restraint, for which a judge sentenced him to an aggregate

five-year prison term with two years of parole ineligibility.1

 On appeal, Delgado challenges the trial court's jury

instructions. Bryant argues that, separately and cumulatively,

several errors deprived him of a fair trial. He contends a

detective's testimony commenting on video surveillance recordings

1
 Delgado and Bryant filed separate appeals. We have consolidated
them for purposes of this opinion.

 2 A-2329-14T2
invaded the function of the jury; the trial court abused its

discretion by refusing to sanitize his prior conviction; the record

did not sustain a conviction for criminal restraint and the trial

court erroneously denied his motion for a new trial; his trial

counsel was ineffective; and his sentence is excessive.

 For the reasons that follow, we affirm the convictions and

sentences of both defendants.

 In June 2013, a Camden County grand jury charged Delgado and

Bryant in a multi-count indictment with second-degree aggravated

assault, N.J.S.A. 2C:12-1(b)(1) (count one); second-degree

conspiracy to commit aggravated assault, N.J.S.A. 2C:5-2 and

2C:12-1(b)(1) (count two); fourth-degree unlawful possession of a

weapon, a knife, N.J.S.A. 2C:39-5(d) (count six); third-degree

possession of a weapon for an unlawful purpose, N.J.S.A. 2C:39-

4(d)(1) (count seven); and third-degree criminal restraint,

N.J.S.A. 2C:13-2(a) (count eight). In counts three, four, and

five, the grand jury charged Delgado with, respectively, third-

degree aggravated assault, N.J.S.A. 2C:1(b)(2), fourth-degree

unlawful possession of a weapon, a beer bottle, N.J.S.A. 2C:39-

5(d), and third-degree possession of a weapon for an unlawful

purpose, N.J.S.A. 2C:39-4(d)(1). In count fourteen, the grand

jury charged Bryant with fourth-degree certain persons not to have

weapons, N.J.S.A. 2C:39-7(a).

 3 A-2329-14T2
 In addition to Delgado and Bryant, the grand jury charged

James O. Coles in counts nine, ten, and eleven with, respectively,

third-degree aggravated assault, N.J.S.A. 2C:12-1(b)(2), fourth-

degree unlawful possession of a weapon, a pool cue, N.J.S.A. 2C:39-

5(d), and third-degree possession of a weapon for an unlawful

purpose, N.J.S.A. 2C:39-4(d). Lastly, the grand jury charged the

bartender, Nicole L. Reichle, in counts twelve and thirteen, with,

respectively, third-degree hindering apprehension, N.J.S.A. 2C:29-

3(a)(3), and third-degree hindering apprehension or prosecution,

N.J.S.A. 2C:29-3(a)(7).

 Delgado, Bryant, and co-defendant Coles were tried together.

The jury found Delgado guilty of conspiracy to commit simple

assault, simple assault, and third-degree criminal restraint. The

court subsequently held Delgado's conspiracy conviction was

"effectively . . . a not guilty finding[,]" and the parties

agreed.2 On the simple assault count, the court ordered Delgado

pay fines and penalties and provide a DNA sample. On the criminal

restraint count, the court sentenced defendant to a forty-two

month custodial term and imposed appropriate fines and penalties.

2
 On October 20, 2014, the judge determined Delgado's conspiracy
conviction was "really effectively a not guilty" because
defendants could not conspire to commit a disorderly persons
offense.

 4 A-2329-14T2
 The jury found Bryant guilty of conspiracy to commit simple

assault, third-degree aggravated assault, and third-degree

criminal restraint. The court dismissed the conspiracy

conviction, holding the verdict was "really effectively a not

guilty" again because defendants could not conspire to commit a

disorderly persons offense. The parties agreed the conspiracy

count "was effectively a not guilty finding[.]"

 Bryant moved for a new trial, but the judge denied the motion.

On the aggravated assault count, the judge sentenced Bryant to a

five-year custodial term with two years of parole ineligibility,

and ordered that he pay appropriate fines and penalties. On the

criminal restraint count, the judge sentenced Bryant to a

concurrent four-year custodial term.3

 The State developed much of their case at trial through The

Last Chance Saloon's video surveillance recordings, which they had

a detective comment on, and the testimony of the victim's brother-

in-law. This evidence and testimony established the following

timeline and facts.

 Shortly before 7:00 p.m. on November 18, 2012, after a day

of drinking, Daniel DeChurch and his brother-in-law entered the

3
 The jury convicted Coles on the three counts with which he was
charged.

 5 A-2329-14T2
Last Chance Saloon in Chesilhurst.4 The two men ordered a beer at

the bar. At 7:00, DeChurch walked into the men's room and Delgado

and Bryant walked in behind him. A third man, approximately six

feet three inches tall, weighing 230 pounds, and bald, stood in

front the men's room door, arms crossed. Three minutes later,

DeChurch's brother-in-law heard some commotion and walked toward

the bathroom door. The big man standing in front of the door

punched him three times, knocked him down and kicked him. By

then, DeChurch was on the floor outside the bathroom and men were

beating him. DeChurch's face looked like he had been stung by

bees multiple times.

 DeChurch explained what happened before and after he entered

the men's room. He was not familiar with the bar's restrooms and

mistakenly attempted to turn on the light in the women's bathroom.

Delgado, who was sitting at the bar, told DeChurch he had entered

the wrong bathroom and directed him towards the men's room.

DeChurch walked into the men's bathroom. Delgado and Bryant

entered the men's room after DeChurch and stood next to him while

he used the urinal. One of the men asked DeChurch why he had

touched the wall. Confused, and under the assumption the man was

4
 DeChurch was hospitalized the night he was beaten. His blood
alcohol concentration was .317, nearly four times the level at
which a driver is deemed to be driving under the influence of
alcohol. N.J.S.A. 39:4-50.

 6 A-2329-14T2
referring to his mistaken attempt to enter the women's room,

DeChurch said he had been looking for the light switch.

 While DeChurch continued to use the urinal, Bryant punched

him in the side of his head. As DeChurch turned towards the men,

Delgado struck DeChurch in the back of his head with a beer bottle.

DeChurch testified:

 it pretty much knocked me unconscious. I
 remember a few seconds of falling forward. I
 hit my teeth on the chrome flush, the part
 where you flush the urinal. I actually slid
 down the inside of the urinal and ended up on
 the floor. At that point I started being
 kicked and hit from pretty much every
 direction.

Delgado and Bryant kicked DeChurch in his face and ribs, stomped

on the back of his head, and knocked him down each time he attempted

to get off his back and onto his hands and knees.

 DeChurch fought back in self-defense. He reached and opened

the bathroom door, which had been locked from the inside, but a

man standing outside the door attempted to push DeChurch back into

the bathroom. DeChurch fell down in the doorway of the men's

room, and the kicking, punching and stomping resumed. DeChurch

could not recall being attacked after exiting the men's room;

however, footage from the saloon's surveillance cameras depicts

DeChurch falling near the bar, being surrounded by men, and being

struck with a pool cue.

 7 A-2329-14T2
 DeChurch asked the barmaid to call the police while he stood

at the bar and used napkins to wipe blood from his eyes, but the

barmaid refused. According to Dechurch's brother-in-law, when he

asked if the bar had video surveillance, the bartender told him

it did not work.

 Following the assault, DeChurch and his brother-in-law went

to DeChurch's home where they called the police. The police and

emergency medical services arrived at DeChurch's home and

transported him to the hospital where Doctor Steven E. Ross treated

DeChurch for "bruises around his face and head, a small

subarachnoid hemorrhage to the right frontal region, [and] a large

laceration of his right thigh." The doctor explained that a

subarachnoid hemorrhage is "a very mild bruise on the surface of

the brain." The cut on DeChurch's thigh required thirty-seven

stitches and the doctor placed a draining tube in the wound for

about one week to prevent infection. DeChurch spent three days

in the hospital. Upon being discharged, a doctor treated DeChurch

for a local infection of the wound on his thigh.

 On appeal, Delgado argues:

 POINT I

 THE TRIAL COURT'S INSTRUCTION ON ACCOMPLICE
 LIABILITY DEPRIVED DEFENDANT OF A FAIR TRIAL
 DUE TO THE CONFUSION AND AMBIGUITY RESULTING
 FROM THE USE OF "AND/OR," AND DUE TO THE
 COURT'S FAILURE TO INSTRUCT THE JURY ON

 8 A-2329-14T2
 ACCOMPLICE LIABILITY WITH RESPECT TO THE
 CHARGE OF CRIMINAL RESTRAINT AND FALSE
 IMPRISONMENT.

 A. The trial court's repeated use of
 "and/or" in the jury charge resulted in
 ambiguity such that jurors may have
 reached a guilty verdict based upon
 different theories.

 B. The trial court's failure to instruct
 jurors on accomplice liability with
 respect to criminal restraint and false
 imprisonment, pursuant to the principles
 enunciated in State v. Bielkiewicz,
 deprived defendant of a fair trial.

Bryant argues:

 POINT I

 THE TRIAL COURT ERRED BY DENYING DEFENDANT'S
 MOTION FOR A NEW TRIAL.

 POINT II

 THE DETECTIVE'S TESTIMONY WAS INAPPROPRIATE
 AND CONSTITUTES REVERSIBLE ERROR.

 A. HEARSAY.

 B. THE DETECTIVE'S IMPROPER LAY
 OPINION INVADED THE PROVINCE OF THE
 JURY.

 POINT III

 THE TRIAL COURT ABUSED ITS DISCRETION BY
 REFUSING TO SANITIZE DEFENDANT'S PRIOR
 CONVICTION.

 9 A-2329-14T2
 POINT IV

 THERE IS INSUFFICIENT EVIDENCE IN THE RECORD
 TO SUSTAIN A CONVICTION FOR CRIMINAL
 RESTRAINT.

 POINT V

 DEFENDANT RECEIVED INEFFECTIVE ASSISTANCE OF
 COUNSEL.

 A. FAILURE TO REQUEST AN ADJOURNMENT OF
 TRIAL.

 B. FAILURE TO OBJECT TO IN-COURT
 IDENTIFICATION OF DEFENDANT AND/OR
 REQUEST WADE HEARING.

 C. FAILURE TO OBJECT TO PRITCHETT'S
 TESTIMONY.

 D. CRIMINAL RESTRAINT, COUNT 8.

 POINT VI

 A NEW TRIAL IS WARRANTED DUE TO CUMULATIVE
 ERROR.

 POINT VII

 DEFENDANT'S SENTENCE IS EXCESSIVE.

 We first address Delgado's arguments, neither of which he

raised before the trial court. "[N]o party may urge as error any

portion of the charge to the jury or omissions therefrom unless

objections are made thereto before the jury retires to consider

its verdict" except when the error "is of such a nature as to have

been clearly capable of producing an unjust result[.]" R. 1:7-2

and -5; R. 2:10-2. Plain error in a jury charge is a "legal

 10 A-2329-14T2
impropriety in the charge prejudicially affecting the substantial

rights of the defendant and sufficiently grievous to justify notice

by the reviewing court and to convince the court that of itself

the error possessed a clear capacity to bring about an unjust

result." State v. Hock, 54 N.J. 526, 538 (1969) (citation

omitted), cert. denied, 399 U.S. 930, 90 S. Ct. 2254, 26 L. Ed.

2d 797 (1970). We find no plain error here.

 Defendant first challenges the trial court's charge on

accomplice liability. The court gave the following instruction:

 A person is an accomplice of another person
 in the commission of an offense if with the
 purpose of promoting or facilitating the
 commission of the offense he solicits such
 other person to commit it and/or aids or
 agrees or attempts to aid such other person
 in planning or committing it.

 . . . .

 That each defendant solicited the other
 to commit it and/or did aid or agree to attempt
 to aid him in planning or committing it.

 . . . .

 If you find that . . . Darrin Bryant,
 with the purpose of promoting or facilitating
 the commission of the offenses solicited
 [defendant] or that . . . defendant . . . with
 a purpose of promoting or facilitating the
 commission of the offenses solicited Darrin
 Bryant to commit it and/or aided or agreed or
 attempted to aid him in planning or committing
 it, then you must consider him as if he
 committed the crimes himself.

 11 A-2329-14T2
 . . . .

 That Darrin Bryant and/or [defendant]
solicited each other to commit it and/or did
aid or agree or attempt to aid each other in
planning or committing it.

 . . . .

 Guided by these legal principles then if
you've found the defendants not guilty of the
crime charged, you should then consider
whether the defendant is guilty or not guilty
as an accomplice on the lesser charge of
aggravated assault, significant bodily injury
and/or simple assault bodily injury.

 . . . .

Therefore, in order to find the defendants
guilty of the lesser included offenses of
aggravated assault significant bodily injury
or simple assault bodily injury, the State
must prove beyond a reasonable doubt that
Darrin Bryant and/or [defendant] committed the
crimes of aggravated assault and significant
bodily injury and/or simple assault bodily
injury as alleged in the lesser included
offenses, that Darrin Bryant and [defendant]
solicited the other to commit aggravated
assault significant bodily injury and/or
simple assault bodily injury and/or did aid
or agree or attempt to aid him in planning to
commit the aggravated assault significant
bodily injury and/or simple assault bodily
injury.

 Number three, that . . . [defendant]
and/or Darrin Bryant's purpose was to promote
or facilitate the commission of the aggravated
assault and significant bodily injury and/or
simple assault bodily injury.

 Number four, that Darrin Bryant and/or
[defendant] possessed the criminal state of

 12 A-2329-14T2
 mind that is required for the commission of
 aggravated assault significant bodily injury
 and/or simple assault bodily injury.

 (Emphasis added).

 Delgado contends the trial court's use of the phrase "and/or"

in the accomplice liability charge "was likely to have resulted

in juror confusion, and to have also created a myriad of

potentially problematic, non-unanimous verdicts. As there is no

way of ruling out the possibility that the verdict was other than

unanimous in this case, the convictions must be reversed." To

support this argument, defendant relies upon State v. Gonzalez,

444 N.J. Super. 62 (App. Div.), certif. denied, 226 N.J. 209

(2016).

 In denying Gonzalez's petition for certification, the Supreme

Court stated:

 The Court agrees with the Appellate Division's
 conclusion that the use of "and/or" in the
 jury instruction in this case injected
 ambiguity into the charge. The criticism of
 the use of "and/or" is limited to the
 circumstances in which it was used in this
 case.

 [Gonzalez, supra, 226 N.J. at 209 (citations
 omitted).]

The circumstances in the case before us do not replicate those in

Gonzalez. Comparing the charge in Gonzalez, supra, 444 N.J. Super.

 13 A-2329-14T2
at 73-75, with the charge given by the court in the case before

us makes the difference apparent.

 In addition, here defendant restricts his challenge

concerning the use of "and/or" to the accomplice liability portion

of the charge. The trial court substantially followed Model Jury

Charge (Criminal), "Liability for Another's Conduct" (1995). We

infer from the Supreme Court's statement accompanying its denial

of Gonzalez's petition for certification that if the Court deemed

the model jury charge so per se ambiguous so as to deprive Gonzalez

of a fair trial, the Court would have directed that the ambiguity

in the model charge be corrected.

 Lastly, we infer from the silence of three defense attorneys

and the prosecutor that the parties did not perceive any ambiguity

in the trial court's jury instructions. If, as defendant contends,

the use of "and/or" was likely to have resulted in juror confusion,

certainly one of four experienced attorneys would have called the

issue to the court's attention.

 We find equally unavailing Delgado's second argument: the

trial court committed reversible error by omitting to repeat the

accomplice liability charge with the instructions on criminal

restraint and the lesser-included offense of false imprisonment.

The State did not seek to convict Delgado and Bryant of criminal

restraint on an accomplice liability theory. Accordingly, the

 14 A-2329-14T2
court instructed the jury to consider false imprisonment if it

found "one or either of the defendants" not guilty of criminal

restraint, and explained the verdict sheet identified each

defendant specifically with the charge against him, independent

from his codefendants. In other words, the judge explained

criminal restraint and the lesser-included offense of false

imprisonment separately, and instructed the jury to consider the

charges as they pertained to each defendant specifically.

 Delgado's reliance on State v. Bielkiewicz, 267 N.J. Super.

520 (App. Div. 1993) is misplaced. There, a panel of this court

reversed a murder conviction not because the trial court failed

to give an accomplice charge, but rather because "the trial court's

instructions regarding accomplice liability for murder were

inadequate." Id. at 524-25. The panel explained:

 By definition an accomplice must be a person
 who acts with the purpose of promoting or
 facilitating the commission of the substantive
 offense for which he is charged as an
 accomplice. Therefore, a jury must be
 instructed that to find a defendant guilty of
 a crime under a theory of accomplice
 liability, it must find that he shared in the
 intent which is the crime's basic element, and
 at least indirectly participated in the
 commission of the criminal act.

 In addition, when an alleged accomplice is
 charged with a different degree offense than
 the principal or lesser included offenses are
 submitted to the jury, the court has an
 obligation to carefully impart[] to the jury

 15 A-2329-14T2
 the distinctions between the specific intent
 required for the grades of the offense.

 [Id. at 527-28 (alteration in original)
 (citations omitted).]

 Here, unlike Bielkiewicz, the court did not charge on

accomplice liability. Moreover, the charge the trial court gave

on accomplice liability as to aggravated assault complied entirely

with the pronouncements in Bielkiewicz.

 We turn to Bryant's arguments. Having considered Points I

through IV and VI in light of the record and applicable legal

principles, we conclude they are without sufficient merit to

warrant discussion in a written opinion. R. 2:11-3(e)(2). We add

these brief comments.

 We find no basis for concluding the trial court abused its

considerable discretion concerning either the testimony of the law

enforcement officers about the surveillance videos, State v. J.D.,

211 N.J. 344, 354 (2012), or the admissibility of defendant's

prior criminal record, State v. Sands, 76 N.J. 127, 144 (1978).

Moreover, even if the trial court did misapply its discretion, the

error was harmless considering the strength of the State's case

and the verdicts. R. 2:10-2; State v. Macon, 57 N.J. 325, 337-38

(1971). The trial court properly instructed the jury on the crime

of criminal restraint and the jury's verdict on that count was

supported by adequate evidence on the record. Defendant's claim

 16 A-2329-14T2
the trial court erred by denying his motion for a new trial is

entirely devoid of merit, as is his cumulative error argument.

 As for Bryant's claims his trial counsel was ineffective,

there is "a general policy against entertaining ineffective-

assistance-of-counsel claims on direct appeal because such claims

involve allegations and evidence that lie outside the trial

record." State v. Preciose, 129 N.J. 451, 460 (1992) (citations

omitted). We decline to address the issues on direct appeal.

 Lastly, Bryant claims his sentence is excessive. We disagree.

A sentencing court must exercise discretion "based upon findings

of fact . . . grounded in competent, reasonably credible evidence"

and "apply correct legal principles in exercising its discretion."

State v. Roth, 95 N.J. 334, 363 (1984) (citations omitted). An

appellate court reserves the power to modify sentences only "when

the application of the facts to the law is such a clear error of

judgment that it shocks the judicial conscience." Id. at 364

(citation omitted). An appellate court must not substitute its

judgment for that of the trial court's judgment, but can:

 (a) review sentences to determine if the
 legislative policies, here the sentencing
 guidelines, were violated; (b) review the
 aggravating and mitigating factors found below
 to determine whether those factors were based
 upon competent credible evidence in the
 record; and (c) determine whether, even though
 the court sentenced in accordance with the
 guidelines, nevertheless the application of

 17 A-2329-14T2
 the guidelines to the facts of [the] case
 makes the sentence clearly unreasonable so as
 to shock the judicial conscience.

 [Id. at 364-65.]

Here, defendant argues the trial court misapplied the aggravating

and mitigating factors at sentencing and failed to provide a

comprehensive statement of reasons.

 A trial court must state its reasons for imposing a sentence,

including the factual basis supporting its finding of aggravating

and mitigating factors affecting the sentence. State v. Fuentes,

217 N.J. 57, 73 (2014) (citations omitted). A clear and thorough

explanation of the balancing of the factors is particularly

important, and a detailed statement of reasons is critical for

appellate review because an appellate court must determine whether

the aggravating and mitigating factors were based on competent

credible evidence in the record. Id. at 73-74 (citations omitted).

 At sentencing, the trial court explained its reasons for

imposing defendant's sentence, including the factual basis

supporting his finding of aggravating and mitigating factors. The

judge based the aggravating and mitigating factors on defendant's

criminal record, the testimony presented, and the Last Chance

Saloon's surveillance footage. The court also "considered the

nature and degree of the crime, the need for punishment and

deterrence, the defendant's prospects for rehabilitation, the

 18 A-2329-14T2
presentence report, the defendant's previous involvement in the

criminal justice system, and the recommendations of the prosecutor

and the probation department."

 Moreover, defendant's sentence was within the proper range

of sentencing. The jury convicted defendant of third-degree

aggravated assault and third-degree criminal restraint. N.J.S.A.

2C:43-6(a)(3) states the term of imprisonment for a crime of the

third degree shall be between three and five years. Further, the

court may fix a minimum term of parole ineligibility where it "is

clearly convinced that the aggravating factors substantially

outweigh the mitigating factors[.]" N.J.S.A. 2C:43-6(b).

 In light of the foregoing, the imposition of an aggregate

five-year custodial sentence with a two-year period of parole

ineligibility is not excessive. It is supported by the record and

does not shock the judicial conscience.

 For the foregoing reasons we affirm defendants' convictions

and sentences.

 Affirmed.

 19 A-2329-14T2